**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**Adam L. GOUDY; Benefits Review Board, Respondents.**

No. 84–3485.

United States Court of Appeals, Sixth Circuit.

Argued July 12, 1985.

Decided Nov. 26, 1985.

---

Diane Hodes, argued, Lead Counsel, U.S. Dept. of Labor, Washington, D.C., J. Michael O'Neill, for petitioner.

Sanford A. Meizlish, Barkan & Neff Co., L.P.A., Columbus, Ohio, Clifford Farrell, argued, Benefits Review Bd., Washington, D.C., for respondents.

Before KEITH, MARTIN and WELL-FORD, Circuit Judges.

KEITH, Circuit Judge.

The petitioner, Director of the Office of Workers' Compensation Programs, United States Department of Labor (DOL), seeks review of a decision of the Benefits Review Board precluding the Director from contesting a claim of benefits which was initially approved by the Department of Health, Education and Welfare (HEW) pursuant to Section 435(a)(2)(A) of the Black Lung Benefits Act, 30 U.S.C. § 945(a)(2)(A). Upon granting initial approval, HEW referred the claim to the DOL which submitted it for further evaluation under Part C of the Act. After a de novo hearing, an Administrative Law Judge (ALJ) subsequently reversed HEW's initial finding of eligibility and issued an order denying benefits. At issue on appeal is whether HEW determinations of eligibility

made pursuant to Section 435(a)(2)(A) of the Black Lung Benefits Act are binding on the DOL as initial findings of eligibility which may be submitted for further evaluation by the DOL under Part C of the Act. As we answer this query in the affirmative, the order of the Board nullifying the ALJ's denial of benefits is hereby reversed.

## FACTS

The respondent, Adam Goudy, filed a claim for black lung benefits with HEW on April 2, 1973 under Part B of the Black Lung Benefits Act (the Act).[1] Respondent's application was denied initially and upon reconsideration for two years thereafter.

In compliance with the more lenient standards of eligibility set forth in the 1977 Amendments to the Act, HEW again reviewed the respondent's application and in May, 1973 approved the claim under Section 435(a)(2)(A) of the Act, 30 U.S.C. § 945 *et. seq.* Pursuant to Section 435(a)(2)(A), HEW transferred the respondent's claim to the Department of Labor. DOL accepted the referral but considered HEW's approval as an initial determination of eligibility to be further processed under Part C of the Act. Accordingly, DOL designated the North American Coal Company as the employer liable for payment of benefits. Upon designation, North American Coal contested its liability and challenged the respondent's claim for benefits. DOL thereupon arranged for payment of interim benefits to the respondent, and North American Coal and the respondent submitted additional evidence on the claim to DOL.

On April 2, 1980, a *de novo* hearing on the merits before an Administrative Law Judge (ALJ) was held to evaluate the new evidence. On January 21, 1981, the ALJ issued an order denying the respondent's claim for benefits. Pending the respondent's appeal to the Benefits Review Board, Congress enacted the Black Lung Benefits Amendments of 1981.[2] Section 205 of the 1981 Amendments provided for the transfer of liability from a responsible employer to the Black Lung Disability Trust Fund in cases where either HEW or DOL had denied a black lung claim before March 1, 1978 but had subsequently approved the claim under Section 435 of the Act. Accordingly, on August 24, 1982 North American Coal moved to be dismissed as a party to this action. The Director conceded that under Section 205 the employer should be dismissed as a responsible operator and that DOL would incur any liability approved on appeal.

After considering the respondent's appeal and the employer's motion, the Board dismissed the employer under Section 205 and reversed the order issued by the ALJ denying benefits. The Board initially and upon reconsideration determined that the 1981 Amendments did not change DOL's liability and that under Section 435(a)(2)(A) DOL was required to accept HEW's prior approval as a final adjudication of respon-

---

**1.** Black Lung Benefits Act of 1972, Pub.L. 92–303, 86 Stat. 150 (1972) (amended 1977).

The Act was originally titled the Federal Coal Mine Health and Safety Act of 1969 prior to March 9, 1978, the effective date of the Federal Mine Safety and Health Amendments Act of 1977, Pub.L. No. 95–146, 91 Stat. 1290. Title IV of the Act was substantially amended by the Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 150, the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95, the Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95–227, 92 Stat. 11, and by the Black Lung Benefits Amendments Act of 1981, Pub.L. No. 97–119, 95 Stat. 1635 (1981). For clarity and simplicity, the statute is referred to as the Black Lung Benefits Act, its current,

common title as codified in 30 U.S.C. § 901–945 (1983).

**2.** Black Lung Benefits Amendments of 1981, Pub.L. No. 97–119, Title 11, § 205(a)(1), 95 Stat. 1635, 1645 (1981), (codified as amended at 30 U.S.C. § 932(c)(2) (1983)). Section 932(c)(2) provides in relevant part:

[N]o benefit shall be payable by any operator on account of death or total disability due to pneumoconiosis (1) which did not arise, at least in part, out of employment in a mine during a period after December 31, 1969 when it was operated by such operator; or (2) which was the subject of a claim denied before March 1, 1978, and which is or has been approved in accordance with the provisions of section 945 of this title.

dent's eligibility for benefits. We reverse this ruling for the reasons set forth below.

Congress intended Title IV of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901, to provide benefits to coal miners totally disabled by pneumoconiosis and that the cost of such benefits eventually be shifted to the states and the coal mining industry. *See* H.R.Rep. No. 95–151, 95th Cong., 1st Sess. 21 (1977), U.S.Code Cong. & Admin.News 1978, p. 237. Originally, the Act divided claims for disability benefits into two categories, Part B and Part C. Part B covered claims filed before December 31, 1972 and was administered by HEW. Benefits approved under Part B were paid from general revenues by the Treasury Department. 30 U.S.C. § 922 (1969) (amended 1977). Part C governed claims arising after December 31, 1972 and called for an approved state workers' compensation agency to administer and pay for the claims. Absent a state plan, DOL was to adjudicate the claim under Part C and assign benefits payments to a coal mine operator responsible for the disability. If no responsible operator could be identified, DOL was required to arrange for payments from general funds. *See* 30 U.S.C. §§ 932, 934 (1969) (amended 1977).

In 1972, Congress amended the Act to extend the filing periods for Parts B and C to cover all claims filed prior to July 1, 1973 and all claims filed after December 31, 1973, respectively. Due to the overwhelming backlog of claims, Congress also extended federal responsibility for claims filed under Part C one year and created a third category of claims under Section 415. This Section provided federal coverage for claims filed during the transition period between the federally funded Part B and the state or industry funded Part C, (June 30, 1973 through December 31, 1973). *See* Section 415, 30 U.S.C. § 925.

The 1972 Amendments, however, did not bring about the desired transfer of fiscal responsibility for benefits payments to the mining industry and the states. The states had failed to enact satisfactory workmen's compensation schemes and DOL was unable to identify a responsible operator in a majority of the Part C claims. Moreover, many claims which should have been approved were denied. *See* H.R.Rep. No. 95–151 at 5. In 1977, Congress responded to these problems by enacting the Black Lung Benefits Reform Act of 1977,[3] and the Black Lung Benefits Revenue Act of 1977.[4] The Revenue Act provided for the Black Lung Disability Trust Fund, the funds of which are raised through an excise tax on the sale of coal and used to pay claimants' benefits where no coal operator can be designated or relied upon. Section 424 of the Act, 30 U.S.C. § 934(a) (1977). The Reform Act provided more lenient standards of eligibility and a statutory framework within which to apply the liberalized standards to all pending or previously denied claims filed under Part B. *See* Section 435 of the Act, 30 U.S.C. § 945. (Section 15 of the Reform Act.) Under the provisions of Section 435, claimants with pending or previously rejected claims selected one of three review procedures:

> The claimant could elect to have HEW refer the claim directly to DOL for review under the liberalized 1977 amendments with an opportunity to submit additional evidence. *See* Section 435(a)(1)(B).[5]

---

**3.** Black Lung Benefits Reform Act of 1977, Pub.L. 95–239, 92 Stat. 95 (1977).

**4.** Black Lung Benefits Revenue Act of 1977, Pub.L. 95–227, 92 Stat. 11 (1977).

**5.** Section 435(a)(1)(B) provides:
Section 435(a)(1) The Secretary of Health, Education, and Welfare shall promptly notify each claimant who has filed a claim for benefits under part B of this title and whose claim is either pending on the effective date of this sec-

tion or has been denied on or before that effective date, that, upon the request of the claimant, the claim shall be either—
(B) referred directly by the Secretary of Health, Education and Welfare to the Secretary of Labor for a determination under paragraph (3), with no opportunity for the claimant to present additional medical or other evidence in accordance with that paragraph, taking into account the amendments made by the Black Lung Benefits Reform Act of 1977.

The claimant could elect to have HEW conduct the liberalized review of the claim based on evidence already in the record and if denied, then transferred to DOL for review with an opportunity to submit additional evidence. *See* Section 435(a)(2)(B).[6]

Or the claimant could have the claim reviewed by HEW on the basis of evidence already in the file and, if approved, transmitted to DOL as "an initial determination of eligibility" with instructions that DOL "shall immediately make or otherwise provide for payment in accordance with [Part C of the Act]". *See* Section 435(a)(2)(A).

It is the statutory interpretation of the last option under Section 435(a)(2)(A) of the Act that is at issue in this appeal. The Section provides:

(2)(A) The Secretary of Health, Education and Welfare shall approve forthwith each claim for which review is requested under paragraph (1)(A) if, based upon the evidence on file, the provisions of part B of this title, as amended by the Black Lung Benefits Reform Act of 1977, require such approval. The Secretary of Health, Education and Welfare shall certify such approval to the Secretary of Labor and such approval shall be binding upon the Secretary of Labor as an initial determination of eligibility. Upon receipt of that certification, the Secretary of Labor shall immediately make or otherwise provide for payment of the claim in accordance with this part.

*See* 30 U.S.C. § 945(a)(2)(A). The Benefits Review Board and the respondent interpret the Section to require DOL to accept HEW's "initial determination of eligibility" under Part B as a final adjudication which precludes the DOL from seeking further review of the claimant's eligibility, identifying a responsible operation or conducting any other procedures under Part C of the Act:

As explained in our original decision, the Secretary of Labor, on behalf of the Trust Fund, cannot contest claimant's entitlement in any case approved pursuant to Section 435(a)(2)(A) of the Act, 30 U.S.C. § 945(a)(2)(A). *Yakubco v. Republic Steel Corp.*, 2 BLR 1–1116 (1980), aff'd sub. nom. *Director, OWCP v. Republic Steel Corp.*, 663 F.2d 8 (3rd. Cir. 1981). The Trust Fund accordingly became liable in the present case once the Department of Health, Education and Welfare (HEW) certified the claim to the Department of Labor pursuant to this provision. Any subsequent action by the Secretary other than payment, including the identification of a putative responsible operator, was improper and had no effect on the Trust Fund's liability. Consequently, the administrative law judge's denial on the merits does not affect this liability. *Chrislip v. Bethlehem Mines Corp.*, 1 BLR 1–1133 (1981).

*Goudy v. North American Coal Corp. and Director, OWCP, United States Department of Labor*, BRB No. 81–262 BLA, Decision and Order on Reconsideration April 27, 1984; Joint Appendix at 11.

 In our view, HEW's "initial determinations of eligibility" under Part B are not binding upon the Department of Labor as final adjudications of eligibility. Congress intended for all denied Part B claims to be reviewed by DOL under Part C of the Act where designated operators and the Director would be provided with an opportunity to litigate the eligibility of the claimant and any liability for payments. *Director v. Bethlehem Mines Corp.*, 669 F.2d 187, 195–97 (4th Cir.1982); *Director v. Forsyth Energy, Inc.*, 666 F.2d 1104, 1110–11 (7th Cir.1981). *See* 124 Cong.Rec.S. 1443 (daily ed. Feb. 7, 1978) (remarks of Sen. Randolph); *reprinted in* [The Legislative History of the] Black Lung Benefits Reform Act and the Black Lung Benefits Review Act of 1977, House Committee on Education and Labor, 96th Cong., February

---

**6.** Section 435(a)(2)(B) provides:

(B)(i) The Secretary of Health, Education and Welfare shall refer to the Secretary of Labor any claim not approved under subparagraph (A) for the determination under paragraph (3), and shall notify the claimant of that referral to the Secretary of Labor for such a determination.

1979, at 902; 124 Cong.Rec.S. 1446 (daily ed. Feb. 7, 1978) (remarks of Sen. Javits), *reprinted in The Legislative History, supra,* at 908 (emphasis added). Thus the Board's interpretation of section 435(a)(2)(A) contravenes the stated intent of the 1977 amendment of the Act and, as we note below, the plain language of the provision.

■ For example, the Board's finding that an HEW "initial determination of eligibility" is binding as a final adjudication of liability, renders the word "initial" superfluous. *Director v. Forsyth Energy,* 666 F.2d at 1107. And under other provisions of the Act, the phrase "initial determination" denotes one of several procedural steps under Part C used to determine claims where a responsible operator may be found liable. *Id., compare* Section 435(a)(2)(A), 30 U.S.C. § 945(a)(2)(A) *with* Section 424(a)(1)(A)(i), 30 U.S.C. § 934(a)(1)(A)(i). Since identical phrases repeated throughout the same act are presumed to have the same meaning, we conclude "initial determination" under Section 435(a)(2)(A) also refers to the procedures provided under Part C. *Director v. Forsyth Energy,* 666 F.2d at 1108.

■ Furthermore, the language of Section 435(a)(2)(A) providing that the Secretary of Labor "... shall immediately make or otherwise provide for the payment of the claim in accordance with this part" also supports DOL's contention that this Section calls for consideration of the alternative payment methods and additional eligibility procedures provided under Part C. As Section 435 is within Part C of the Act, we conclude Section 435(a)(2)(A)'s phrase "in accordance with this part" can only refer to further procedures under Part C. *Director v. Forsyth Energy,* 666 F.2d at 1108; *Director v. Bethlehem Mines Corp.,* 669 F.2d at 194–95. In Section 435(b)(1), 30 U.S.C. § 945(b)(1), the same phrase, "Secretary of Labor ... shall immediately make or otherwise provide for the payment of the claim in accordance with this part" appears in a portion of the Act which explicitly provides that operators may be found liable under

Part C. As noted in *Forsyth Energy,* "there is a presumption that identical words used twice in the same act have the same meaning." 666 F.2d at 1108. Thus, we conclude that Part C, which provides for a separate array of procedures to determine the eligibility and fiscal responsibility of black lung claims, governs Part B claims referred to DOL under § 435(a)(2)(A). *Director v. Forsyth Energy,* 666 F.2d at 1107, 1108; *see Atlantic Cleaners and Dyers v. United States,* 286 U.S. 427, 52 S.Ct. 607, 76 L.Ed. 1204 (1932).

■ In construing a statute, a cardinal principle is to preserve the entire statute and accord each clause and word due effect. *United States v. Menasche,* 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955); C. Sands, *Sutherland's Statutory Construction,* 46.06 (4th ed. 1973). Since it is possible to give effect to the terms "initial determination" and "make or otherwise provide for payment in accordance with this part" by following the procedures of Part C of the Act and assessing liability against the responsible operator, the Benefits Review Board erred in interpreting section 435(a)(2)(A) to preclude DOL from reviewing a claim under Part C after an initial determination of eligibility by HEW. As noted in *Forsyth Energy,* 666 F.2d at 1108, the phrase "make or otherwise provide for payment" alludes to both forms of liability provided for under Part C of the Act: trust fund liability or operator liability. Section 435(a)(2)(A)'s incorporation of the alternative form of liability provided under Part C indicates that, like other previously denied claims reviewed by DOL, Part B claims which HEW initially approves and refers to DOL are subject to further evaluation by the Director under Part C. In our view, Section 435(a)(2)(A)'s phrase "make or otherwise provide for payment" authorizes the Director, under Part C, to designate a responsible operator or the fund for payment of benefits in Part B claims referred to DOL. Under Part C, designation of fiscal responsibility by DOL automatically gives rise to further procedures in which the employer and the Director are afforded an

opportunity to challenge liability and defend the Fund respectively. In sum, since Section 435(a)(2)(A) directs the Secretary of Labor to elect a form of payment provided for under Part C, we conclude that DOL is not prevented by that Section from proceeding with further Part C evaluation of a claim referred by HEW.

In *Yakubco v. Republic Steel Corp.*, 2 BLR 1–1116 (1980), aff'd. sub. nom. *Director, OWCP v. Republic Steel Corp.*, 663 F.2d 8 (3rd. Cir.1981), the Board's analysis of Section 435(a)(2)(A) initially focused on the terms of Section 435(a)(3)(A). Section 435(a)(3)(A) states: "Except as provided in this section, the Secretary of Labor shall treat each claim referred by the Secretary of HEW under paragraph (1)(B) or (2)(B) as if it were a claim filed under this part." The Board reasoned that since 435(a)(2)(A) claims were not enumerated in section 435(a)(3)(A), such claims were not subject to Part C and were the sole responsibility of the fund. In our view, this interpretation of section 435(a)(3)(A) disrupts the statutory scheme as set forth in the remainder of section 435 and contravenes the purposes for which the administrative review procedures in section 435 were established.

The Board is correct that claims which are reviewed and denied by HEW or in which the claimant elects DOL review (section 435(a)(2)(B) or 435(a)(1)(B) claims, respectively) are specifically identified as Part C claims in section 435(a)(3)(A). Thus Section 435(a)(3)(A) expressly provides that DOL may review 435(a)(1)(B) and (a)(2)(B) claims under the full panoply of procedures set forth in Part C, including evidentiary development not available to DOL in processing section 435(a)(2)(A) approvals. In reviewing section 435(a)(1)(B) or 435(a)(2)(B) claims pursuant to Part C, DOL is not initially bound by the determination made by HEW pursuant to Section 435(a)(2). Rather DOL is to conduct, in effect, a pre-initial *de novo* Part C review, in which the claimant is given the opportunity to present new evidence before DOL makes an initial determination. However, in claims which are first reviewed and approved by HEW (section 435(a)(2)(A) claims such as the claim at bar), DOL is precluded from conducting additional pre-initial investigation because the HEW determination is binding on DOL as an initial determination of eligibility. We do not agree with the Board that because Section 435(a)(3)(A) expressly provides that 1(B) and 2(B) claims be initially evaluated by DOL under Part C, that Congress intended to exclude section 435(a)(2)(A) claims from the liability provisions of Part C. *See Director, OWCP v. Forsyth Energy, Inc.*, 666 F.2d at 1108, 1109. Unlike 1(B) and 2(B) claims, claimants electing section 435(a)(2)(A) review have received approval of their claims and do not require an additional opportunity to submit evidence prior to DOL's initial determination. We conclude that under Section 435(a)(2)(A), DOL may proceed under Part C except for the sections allowing pre-initial determinations of liability.

Further, the Board's conclusion that Section 435(a)(3)(A) identifies the only claims subject to Part C renders another subparagraph, section 435(a)(2)(B)(ii), inconsistent with the rest of Section 435. Section 435(a)(2)(B)(ii) provides that if a claimant disputes the scope or terms of an HEW approval, the disputed claim shall be referred to DOL for a determination under section 435(a)(3). The reason for such a referral is clear—the claimant's dispute is to be evaluated by DOL pursuant to Part C evidentiary procedures, in which the claimant is permitted to develop further evidence to resolve the disputed contentions. We agree with the Fourth and Seventh Circuits that the Board's interpretation of Section 435 would lead to the anomalous result of having these HEW approvals treated as Part C claims and therefore subject to individual operator liability. Consequently, some HEW approvals would be paid by individual operators and some would be paid by the fund, depending on whether the claimant disputed the scope or terms of the HEW approval. In our view, the Act did not contemplate such a result. *Director OWCP v. Bethlehem Mines*

*Corp.*, 669 F.2d at 195; *Director, OWCP v. Forsyth Energy, Inc.*, 666 F.2d at 1109.

The Board's interpretation of section 435(a)(2)(A) would also create an anomalous result for claimants who elected review of their claims under section 435 of the Act by DOL rather than HEW. Under the Board's interpretation, those claimants electing review by DOL would be subject to Part C, including employer controversion of their claims, whereas those electing review by HEW would not be subject to Part C. There is no rational purpose in having the possibility of controversion by an employer be contingent on the fortuitous selection of agency review by the claimant. In sum, the express language of section 435(a)(2)(A) as well as related provisions of section 435 compel the conclusion that Congress intended HEW approvals to be binding on DOL only as initial determinations of eligibility to be processed under Part C.

Moreover, under the 1981 Amendments,[7] the Director, is required to defend the Fund from any claim he does not remand for payment of benefits. *See Shortt v. Director, OWCP*, 766 F.2d 172, 174 (4th Cir.1985). Regulations governing procedures under the 1981 Amendments specifically provide the Director with the option of contesting a claim despite previous initial determinations of eligibility made by HEW or the deputy commissioner. 20 C.F.R. § 725.497(d) provides:

(d) *Procedure following dismissal of an operator.* After it has been determined that an operator or carrier must be dismissed as a party in any claim in accordance with this section, the Director shall take such action as is authorized by the Act to bring about the proper and expeditious resolution of the claim in light of all relevant medical and other evidence. Action to be taken in this regard by the Director may include, but is not limited to, the assignment of the claim to the Black Lung Disability Trust Fund for the payment of benefits, the reimbursement

of benefits previously paid by an operator or carrier if appropriate, the defense of the claim on behalf of the Trust Fund, or proceedings authorized by § 725.310 [modification proceedings].

Thus, failure on the part of the Director to conduct Part C evaluation of the evidence relied upon by the ALJ in denying benefits initially approved by HEW would violate the mandate to properly resolve the claim and protect the Fund from meritless claims. *Shortt v. Director*, 766 F.2d at 174. Thus, Section 435(a)(2)(A) cannot impose on the Director an initial determination of eligibility by HEW as a final adjudication precluding Part C evaluation. A claim must survive "the entire gauntlet of appeals and reviews prior to the 1981 enactments but after the 1977 amendments." *Markus v. Old Ben Coal*, 712 F.2d 322, 325–26 (7th Cir.1983); *see also Shortt v. Director*, 766 F.2d at 174. Respondent's initially approved claim did not survive beyond HEW's review; it was overturned after a hearing on additional evidence presented by the employer which contested its liability for payments. The Director is entitled to consider this and any other evidence arising after the initial HEW approval.

Accordingly, the Board's decision precluding further review under Part C is reversed and remanded for proceedings consistent with this opinion.

---

7. The 1981 Amendments, codified as amended at 30 U.S.C. § 932(c)(2) (1983), require that liability be transferred from the operators to the Director for all claims that were previously denied by HEW or DOL before March 1, 1978 but subsequently approved under the liberalized Section 435.