**Robert E. McCOWN (85–5471), Willie Robinson (85–5472), Plaintiffs-Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

Nos. 85–5471, 85–5472.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1986.

Decided July 7, 1986.

Steve Blanton (argued), Appalachian Research and Defense Fund of Kentucky, Pikeville, Ky., for plaintiffs-appellants.

Louis DeFalaise, U.S. Atty., Lexington, Ky., John S. Osborn, III, Elyse S. Sharfman, U.S. Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, Ga., Holly Grimes (argued), for defendant-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and CHURCHILL, District Judge.*

KRUPANSKY, Circuit Judge.

In this consolidated action, plaintiffs-appellants Robert E. McCown ("McCown") and Willie Robinson ("Robinson") appealed the judgments of the district court affirming the decisions of the Secretary of Health and Human Services ("Secretary"). The Administrative Law Judges ("ALJ"), pursuant to 42 U.S.C. § 424a of the Social Security Act, had offset the social security disability insurance benefits previously paid to the appellants by reducing those payments by an amount equal to federal black lung benefits concurrently received by each appellant. These reductions became the final decisions of the Secretary when approved by the Appeals Council. Each appellant timely filed his appeal in the district court pursuant to 42 U.S.C. § 405(g). Appellants sought to recover the amount of disability insurance benefits withheld, and to enjoin such future reductions. The relevant facts in both cases are undisputed.

* Hon. James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

Appellant McCown, born July 8, 1921, had been receiving social security disability benefits since January 14, 1966 due to rheumatoid arthritis. On August 6, 1970 he applied for black lung benefits pursuant to Title IV of the 1969 Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901 *et seq.*, (the "Black Lung Act" or "Act"), specifically filing under 30 U.S.C. §§ 921–925, commonly referred to as "Part B" of the Act. His application, however, was not processed nor considered until after passage of the 1977 amendments of the Act. The Department of Health, Education and Welfare ("HEW") (now the Department of Health and Human Services) then reviewed McCown's application pursuant to 30 U.S.C. §§ 931–945, commonly referred to as "Part C" of the Act. HEW certified the claim to the Department of Labor ("DOL") as an initial finding of eligibility under § 945(a)(2)(A) of Part C. On December 1, 1978, the DOL awarded McCown black lung benefits to be paid from the Black Lung Disability Trust Fund effective January 1, 1974.

On July 18, 1979 the Social Security Administration ("SSA") was notified that McCown was receiving black lung benefits pursuant to Part C of the Act. Thereafter, the SSA offset McCown's benefits paid pursuant to Part C of the Act against the Social Security disability benefits he had been receiving since March, 1979. The offset substantially reduced the amount of his future monthly payments. Upon reconsideration, the SSA waived all overpayments but reaffirmed the offset imposed by § 424a because black lung benefits paid pursuant to Part C of the Act were interpreted by the Secretary to be workers' compensation payments which precluded invoking the offset prohibition embodied in Part B of the Act, 30 U.S.C. § 922(b).[1]

McCown was denied further reconsideration, and an ALJ upheld the offset. In late 1982, he was notified that beginning July, 1983 full social security benefits would be restored upon his becoming 62 years of age. McCown's benefits have been fully restored, but he requested an ALJ review seeking reimbursement of the unpaid benefits during the period of the offset. The ALJ upheld the SSA determination that McCown's disability benefits were properly offset, and the Appeals Council denied his request for review, whereupon he filed a complaint in district court seeking repayment of the lost benefits from July, 1979 through June, 1983.

Appellant Robinson, born September 3, 1927, had been awarded social security disability benefits on August 10, 1973. Three days later he filed an application for black lung benefits under Part B of the Act. The application was approved on May 7, 1980 by the DOL pursuant to § 945(b)(1) of Part C of the Act, and benefits were awarded effective January 1, 1974, in accordance with the mandate of the 1977 amendments to the Act. The May Coal Company was designated as the responsible coal mine operator liable for the payment of his benefits.

Subsequently, Robinson received notice from the SSA that pursuant to § 424a, his social security disability benefits would be offset, effective July of 1981, by the amount of black lung benefits he was also receiving. The offset was to continue until Robinson reached 62 years of age in September, 1989.

Upon reconsideration, the validity of the offset was upheld, and Robinson filed a request for an ALJ hearing. The ALJ upheld the validity of the offset, but waived all overpayments. The Appeals Council approved this decision, and Robinson appealed to the district court seeking reinstatement of full benefits.

The district court affirmed the decisions of the Secretary and concluded that the appellants had been awarded black lung benefits pursuant to § 945 of Part C of the

---

**1.** Section 922(b) provides that Part B benefits "shall not be considered a workmen's compensation law or plan for purposes of [the Social Security Act, 42 U.S.C. § 424a]."

Section 424a(2)(A) permits the reduction of social security disability benefits "under a workmen's compensation law or plan..."

Act, which were equivalent to an award of workers' compensation benefits, and therefore subject to the offset provision contained in § 424a.

Initially, a synopsis of the historical underpinnings of Title IV of the Federal Coal Mine and Safety Act, 30 U.S.C. § 901 *et seq.*, is enlightening.[2] The Act was intended to provide that the funding of benefits paid to coal miners totally disabled by pneumoconiosis eventually would be shifted from general revenues of the United States paid by the Treasury Department, to the individual states and/or the coal mining industry. *See* 30 U.S.C. § 901; *see also* H.R.Rep. No. 95-151, 95th Cong., 1st Sess. 21, *reprinted in* 1978 U.S.Code Cong. & Ad.News 237, 257.

Prior to the 1977 amendments to the Act, disability benefits for claims filed on or before December 31, 1973 were administered pursuant to Part B of the Act and funded from the general revenues of the United States and paid by the Treasury Department. Claims filed subsequent to December 31, 1973 were paid pursuant to Part C of the Act, which contemplated funding by a coal mine operator responsible for the disability, or by a state workers' compensation agency under circumstances where the responsible coal mine operator could not be identified. Absent an approved state workers' compensation agency to administer and pay Part C claims, and absent an identifiable coal mine operator responsible for the disability, the DOL was required to certify the award for payment from the general revenue funds of the United States. *See* 30 U.S.C. §§ 932 and 934 (1969) (amended 1977).

Congressional enactment of the 1977 amendments to the Act in the form of the Black Lung Benefits Revenue Act and the Black Lung Benefits Reform Act was prompted by the failure of the individual states to promulgate legislation implementing the federal mandate directing the individual states to voluntarily accept funding of claims arising pursuant to the Act and to administer the Act through state workers' compensation agencies, coupled with the DOL's and/or HEW's inability to identify coal mine operators responsible for claimant disabilities, in addition to an ever increasing backlog of pending claims. These amendments reflected a decided departure from the funding provisions that prevailed prior to the effective date of the 1977 congressional modifications. The funding of benefits payments from the general revenues of the United States, originally implemented under Part B and later as an alternative method of payment under Part C, was abandoned in its entirety.

The 1977 Revenue Act provided for a newly created Black Lung Disability Trust Fund, to be funded by an excise tax imposed upon the sale of coal and earmarked to pay claimants' benefits under circumstances where a responsible coal mine operator could not be identified. *See* 30 U.S.C. § 933. Where a responsible coal mine operator is identified, the operator so identified must assume payment of the benefits awarded to the claimant. *See* 30 U.S.C. § 933. The Reform Act prescribed liberalized standards of eligibility and a statutory framework within which to apply the standards to all pending or previously denied claims including, but not limited to, those originally filed under Part B of the Act. *See generally* 30 U.S.C. § 945.

McCown was awarded black lung benefits pursuant to § 945(a)(2)(A),[3] to be paid

---

**2.** For an extensive history of the Act, *see Director, Office of Workers' Compensation Programs, United States Department of Labor v. Goudy,* 777 F.2d 1122 (6th Cir.1985) (Keith, J.).

**3.** 30 U.S.C. § 945(a)(2)(A) provides:

(2)(A) The Secretary of Health and Human Services shall approve forthwith each claim for which review is requested under paragraph (1)(A) if, based upon the evidence on file, the provisions of part B of this subchapter, as amended by the Black Lung Benefits Reform Act of 1977, require such approval. The Secretary of Health and Human Services shall certify such approval to the Secretary of Labor and such approval shall be binding upon the Secretary of Labor as an initial determination of eligibility. Upon receipt of that certification, the Secretary of Labor shall immediately make

from the Black Lung Disability Trust Fund. Robinson was awarded benefits pursuant to § 945(b)(1)[4] wherein the DOL reviewed his claim applying the 1977 amendments and awarded benefits for his disability to be paid by the May Coal Company which was identified as the responsible coal mine operator.

On appeal, appellants advanced three contentions in support of reversal.

Appellants' first assignment of error charged that they had been awarded black lung benefits pursuant to Part B of the Act which invoked the offset prohibition contained in 30 U.S.C. § 922(b).[5] This allegation is patently without merit for the obvious reason that the appellants were never awarded black lung benefits pursuant to Part B. Consequently, § 922(b) is inapplicable.

Moreover, assuming *arguendo* that the appellants had filed their applications for black lung benefits prior to the effective date of the 1977 amendments pursuant to Part B of the Act, and that those applications were pending as of the effective date of the 1977 amendments, their assertion that those claims should have been processed pursuant to Part B of the Act is foreclosed by this court's decision in *Director, Office of Workers' Compensation Programs, United States Dep't. of Labor v. Goudy*, 777 F.2d 1122 (6th Cir.1985). Therein, this court explicitly concluded that all claims on file prior to the enactment of the 1977 amendments, either pending or previously denied, were to be processed pursuant to *Part C* of the Act, specifically alluding to § 945(a)(2)(A) and § 945(b)(1). *Goudy*, 777 F.2d at 1127. These are the two Part C provisions at issue herein. Thus, appellants' contention that they were awarded benefits pursuant to Part B simply because their claims were filed prior to 1977 under Part B is misplaced.

■ Notwithstanding the conclusion that their black lung benefits had been awarded pursuant to Part C of the Act, appellants' second assignment of error alleged that they were nevertheless entitled to the § 922(b) prohibition against offset. The gravamen of appellants' argument was that in 1972, Congress declared that Part B benefits were not workers' compensation "for purposes of section 424a of ... [the Social Security] Act", (*see* 30 U.S.C. § 922(b)), and that all changes made to Part B by the 1972 amendments "shall, *to the extent appropriate*, also apply to ... part [C]." *See* 30 U.S.C. § 940 (emphasis added).[6] Appellants urged that the plain

---

4. 30 U.S.C. § 945(b)(1) provides:
   **(b) Review by Secretary of Labor**
   (1) The Secretary of Labor shall review each claim which has been denied under this part (or under section 925 of this title) on or before March 1, 1978, and each claim which is pending under this part (or under section 925 of this title) on such date, taking into account the amendments made to this part by the Black Lung Benefits Reform Act of 1977. The Secretary shall approve any such claim forthwith if the provisions of this part, as so amended, require that approval, and the Secretary shall immediately make or otherwise provide for the payment of the claim in accordance with this part.

5. 30 U.S.C. § 922(b) states:
   **(B) Reduction of benefits**
   Notwithstanding subsection (a) of this section, benefit payments under this section to a miner or his widow, child, parent, brother, or sister shall be reduced, on a monthly or other appro-

priate basis, by an amount equal to any payment received by such miner or his widow, child, parent, brother, or sister under the workmen's compensation, unemployment compensation, or disability insurance laws of his State on account of the disability of such miner due to pneumoconiosis, and the amount by which such payment would be reduced on account of excess earnings of such miner under section 203(b) through (1) of the Social Security Act if the amount paid were a benefit payable under Section 202 of the Social Security Act. *This part shall not be considered a workmen's compensation law or plan for purposes of section 424a of such Act.* (Emphasis added).

6. 30 U.S.C. § 940 provides:
   **§ 940. Availability of benefits under Black Lung Benefits Act of 1972, Black Lung Benefits Reform Act of 1977, and Black Lung Benefits Amendments of 1981.**
   The amendments made by the Black Lung Benefits Act of 1972, the Black Lung Benefits Reform Act of 1977 and the Black Lung Benefits Amendments of 1981 to Part B of this subchap-

---

or otherwise provide for the payment of the claim in accordance with this part.

meaning of these provisions should be conjoined to infer that Part C benefits, like Part B benefits, could not be considered workers' compensation for purposes of § 922(b), and as such their social security benefits were not properly offsettable.

The argument is unpersuasive. Initially, it should be noted that § 922(b) in its final sentence exempts only Part B benefits from the § 424a offset. Moreover, the congressional intent, as reflected by the legislative history, demonstrated that the Senate considered the extent to which Part B provisions should apply to Part C claims. The Senate Report stated:

> Questions were raised during the Committee deliberations over whether the amendments to part B would automatically be applicable, where appropriate, to part C.
>
> *       *       *       *       *       *
>
> Although it would appear clear that the same standards are to govern, the committee concluded that it would be best to so specify.
>
> It is contemplated by the Committee that the applicable portions of [the] following sections of part B, as amended, would apply to part C: section 411, section 412 [30 U.S.C. § 922] (*except the last sentence of subsection (b) thereof*), section 413, and section 414.

S.Rep. No. 743, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 2305, 2325 (emphasis added).

Additionally, the Conference report stated: "The Senate amendments added a new section 430 [30 U.S.C. § 940] to apply all appropriate amendments in part B to part C ... The conferees further agree that the elimination of the social security disability insurance offset provision shall not apply to part C." Conf.Rep. No. 1048, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2338, 2341. Thus, in the same law passing the offset prohibition with respect to Part B benefits, Congress demonstrated its intent not to extend the offset prohibition to Part C benefits.

Appellants also asserted that the term "workmen's compensation law or plan" as it is phrased in § 424a is limited solely to compensation for traumatic workplace injuries and accidents, and does not encompass compensation to workers disabled by an "occupational disease" because when § 424a was enacted in 1965 that term did not, in its everyday usage or contemporaneous common law usage, incorporate benefits due to an occupational disease like black lung. This assertion is equally without merit. The relevant inquiry is whether a claimant's pneumoconiosis is related to his coal mine employment so as to create employer liability. Part A of the Act defines pneumoconiosis as a "chronic dust disease of the lung ... arising out of a coal mine employment." 30 U.S.C. § 902(b). Therefore, inasmuch as the Act itself links the pulmonary disorder in miners to employment in the mines and creates employer liability for this occupational disease, Part C benefits for black lung disease fall squarely within the proscriptions of § 424a.

Appellants' third assignment of error charged that the Secretary implemented her policy statements, including the offset policy, in violation of the Administrative Procedures Act, 5 U.S.C. §§ 552 and 553 ("APA"). Specifically, appellants argued that the Secretary's determinations that: (1) benefits awarded pursuant to Part C are workers' compensation benefits; (2) the offset provisions contained in § 424a applied to Part C; (3) § 922(b) does not apply to Part C awards; and that (4) denied claims filed on or before December 31, 1973, subsequently reviewed pursuant to the 1977 amendments, are considered Part C claims; were each subject to the requirements of the APA. These policy statements were admittedly enunciated by the Secretary in three separate internal SSA publications, namely, the "Program Circular on Disability Benefits" dated January 15, 1974; the November, 1976 "SSA Claims Manual, § 6026(a)"; and the "Program Operations Manual System, § 203.005."

ter shall, to the extent appropriate, also apply to          this part.

Section 553 of the APA requires an administrative agency to publish notice of a proposed *substantive* rule in the Federal Register to permit interested members of the public opportunity to comment upon the proposed promulgation. 5 U.S.C. § 553(b), (c).[7] An express exception exists, however, for *"interpretive* rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A) (emphasis added.)

■ The issue joined, therefore, is whether the Secretary's policy statements constituted interpretive rules which obviated the necessity to publish notice in the Federal Register. The term "interpretive rule" is not expressly defined in the APA, but has been generally connoted as a statement made by an agency to give policy guidance to its staff and affected parties in administering a statute or regulation. *See, e.g., Daughters of Miriam Center for the Aged v. Mathews, Secretary of HEW,* 590 F.2d 1250, 1258 (3d Cir.1978).

This court concludes that the policy statements at issue herein are clearly interpretative rules exempt from the APA notice requirements. The change in law about which appellants complained was effected by congressional enactment of the 1977 amendments, not by the Secretary, whose interpretations of the enactment serve only to provide guidance to her staff in an effort to achieve nationally uniform administrative decisions. In announcing that claims reviewed pursuant to the 1977 amendments to the Act were to be considered Part C claims and that black lung recipients had no statutory basis upon which to avail themselves of the prohibition

against offset, the Secretary was not imposing a new substantive obligation upon the appellants. Nor were the appellants deprived of any substantive right due to the Secretary's offset policy. Indeed, although the offset decreased appellants' monthly income, they were never entitled to receive the inflated benefits. Thus, the reduction of benefits was not tantamount to the retraction by the Secretary of a substantive right because no such right ever inhered to the appellants.

Having concluded that the policy statements at issue herein are interpretive rules that do not infringe the substantive rights of the appellants or the public generally, appellants' contention that the Secretary's enunciated policies were interpretations of general applicability pursuant to 5 U.S.C. § 552(a)(1)(D) [8] must also fail.

The standard of review that should be applied by a court in evaluating interpretive rules is well-settled.

> Interpretive rules are not controlling upon the courts inasmuch as they are not promulgated pursuant to a delegation by Congress of authority to legislate. Instead, courts remain free to substitute their judgment for that of the agency in determining how the statute or regulation is to be implemented. (Citations omitted).

*State of New Jersey v. Dept. of HHS,* 670 F.2d 1262, 1282 (3rd Cir.1981). Additionally, the Supreme Court has instructed that "great deference" be accorded the "interpretation given [a] statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) *quoted in*

---

**7.** 5 U.S.C. § 553 provides in pertinent part:
  (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.
       \*    \*    \*    \*    \*    \*
  Except when notice or hearing is required by statute, this subsection does not apply—
    (A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.
       \*    \*    \*    \*    \*    \*

**8.** 5 U.S.C. § 552(a)(1)(D) provides in pertinent part:
    (a) Each agency shall make available to the public information as follows:
    (1) Each agency shall separately state and concurrently publish in the Federal Register for the guidance of the public—
      (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.

*State of New Jersey v. Dept. of HHS*, 670 F.2d at 1282. Thus, consistent with this court's analysis and conclusions as set forth above, the Secretary correctly interpreted the competing language of the pertinent provisions in the Social Security Act and in the Black Lung Act.

For the foregoing reasons, the Secretary properly offset appellants' social security disability benefits by the amount of black lung benefits they were awarded pursuant to Part C of the Black Lung Act. Accordingly, the decisions of the district court are hereby AFFIRMED.