UNIROYAL CHEMICAL COMPANY, INC., Plaintiff,

v.

Lee M. THOMAS, Admin., U.S. Environ. Protection Agency, Defendant.

No. C88–7114.

United States District Court, N.D. Ohio, W.D.

June 29, 1988.

Jamille Jamra, Eastman & Smith, Toledo, Ohio, for plaintiff.

Thomas Karol, U.S. Attorney's Office, Toledo, Ohio, Eileen McDonough, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

McQUADE, District Judge.

Plaintiff, Uniroyal Chemical Company, Inc., [hereinafter "Uniroyal"], in this civil suit seeks a declaratory judgment that defendant, Environmental Protection Agency, [hereinafter "EPA"], was obligated to accept for storage and disposal on July 10, 1987, the date on which Uniroyal made its request, the Uniroyal dinoseb products banned by EPA's October 7, 1986 order; that by failing to accept Uniroyal's products the EPA elected to take constructive possession of the dinoseb products on July 10, 1987; and the EPA, therefore, has assumed full responsibility for all costs and liabilities to all third parties for the continued storage of the dinoseb products. Uniroyal also requests a writ of mandamus or, in the alternative, an order compelling the EPA to immediately accept for storage and/or disposal the suspended and cancelled dinoseb products currently stored by Uniroyal. Pending before the court are the parties' cross-motions for summary judgment.

The facts underlying this case are generally undisputed. The Federal Insecticide, Fungacide, and Rodenticide Act, [hereinafter "FIFRA"], regulates the sale and use of pesticides. 7 U.S.C. §§ 136–136y (1982 & Supp.IV 1986). Pursuant to the Act all pesticide products, with limited exceptions not applicable in this case, must be registered before sale or distribution in interstate or intrastate commerce. FIFRA

§§ 3(a), 12(a)(1)(A), 7 U.S.C. § 136a(a), 136j(a)(1)(A) (1982).

The Act not only governs the registration of pesticides, but also, the termination of registrations. Section 6 of FIFRA, 7 U.S.C. § 136d, authorizes the Administrator to issue a notice of intent to cancel an existing pesticide registration where he finds that there is a substantial question about the safety of the pesticide's use. Under the Act, a registrant may request a formal administrative hearing to contest the Administrator's notice of intent to cancel a particular pesticide. Because cancellation proceedings are often lengthy, the cancellation of the affected registration is merely suspended pending the outcome of a cancellation hearing. 7 U.S.C. § 136d(c). If, however, the hearing request is later withdrawn, cancellation of the registration occurs immediately by operation of law.

The Administrator, on the other hand, may also issue an emergency suspension order pursuant to § 6(c)(3) which immediately prohibits any sale, distribution or use of the product where he has determined that an emergency exists which does not permit time for a hearing prior to suspension of the pesticide's use. FIFRA § 6(c)(3), 7 U.S.C. § 136d(c)(3) (1982). Where the Administrator issues a notice of intent to suspend the registration of a pesticide the registrants are entitled to a expedited hearing.

After the registration of a pesticide has been suspended and subsequently cancelled Section 19(a) of the FIFRA governs the disposal of the products. Section 136q(a) provides that:

> The Administrator shall, after consultation with other interested Federal Agencies, establish procedures and regulations for the disposal or storage of packages and containers of pesticides and for disposal or storage of excess amounts of such pesticides, and accept at convenient locations for safe disposal a pesticide the registration of which is cancelled under Section 136d(c) of this title if requested by the owner of the pesticide.

FIFRA § 19(a), 7 U.S.C. § 136q(a).

It is the parties' respective obligations under this section which are at issue in this case.

After having determined that the continued sale, distribution, or use of dinoseb pesticide products posed an eminent hazard and that an emergency existed, the Administrator, on October 7, 1986, issued an emergency order suspending the registrations of all pesticide products containing dinoseb and a notice of intent to cancel such registrations. Thereafter, as permitted by the statute, Uniroyal requested a hearing in response to the Administrator's notice to cancel. This request, thus, postponed the cancellation of Uniroyal's registrations.

Concurrent with the issuance of the EPA emergency suspension order registrants, such as Uniroyal were requested to voluntarily initiate a products recall program. Uniroyal promptly initiated a nationwide program to locate and recall all of its dinoseb products from its distributors, retailers and users in response to the EPA's request. As a result of its recall program, Uniroyal received approximately 490,000 gallons of unsold dinoseb products. The majority of these products were received during the months of April, May, and June, 1987. The recalled products along with Uniroyal's unsold inventory of dinoseb products are currently being stored, at plaintiff's expense, in a warehouse located in Port Clinton, Ohio. The Port Clinton warehouse is storing approximately one million six hundred sixty-nine thousand five hundred seventy-five (1,669,575) gallons of dinoseb.

In June of 1987, Uniroyal, for reasons not apparent from the record, withdrew its request for an expedited hearing. Thus, Uniroyal's registrations on dinoseb products were cancelled by operation of law. Thereafter, in July of 1987, Uniroyal formally requested that the EPA accept for disposal all of the recalled dinoseb stored at their Port Clinton warehouse. The EPA failed to respond to Uniroyal's initial request. On September 30, 1987, Uniroyal again requested that the EPA accept these

products for disposal. To date, the EPA has failed to accept Uniroyal's dinoseb products for storage and/or disposal.

The EPA contends that it has acted vigorously and responsibly to prepare to discharge its statutory duty to accept dinoseb products for safe disposal. The EPA's preparation includes the establishment of a task force to develop a comprehensive strategy for the disposal of the suspended and cancelled pesticide products. The task force has produced a dinoseb management plan which sets out a list of steps that should be taken in preparation for the acceptance of these products for disposal. The EPA has also identified the need to determine the quantities, types, and locations of existing stocks of dinoseb products and the need to provide guidance to the dinoseb holders regarding storage of this pesticide. In an attempt to meet this goal the EPA issued a Federal Register notice giving holders of dinoseb products whose registrations had been cancelled, until July 14, 1987 to submit requests to the EPA for disposal. This notice also included guidance on safe storage and made clear the EPA's position that storage prior to acceptance of the product by the EPA was primarily the holders' responsibility. The return information was thereafter compiled by the EPA for the purpose of establishing an effective disposal program.

Additionally, because the EPA has no large scale pesticide disposal or storage facilities of its own it necessarily must obtain such facilities as needed by contracting with private firms. To locate prospective facilities the EPA published in the *Commerce Business Daily* a notice seeking contractors interested in handling the disposal of dinoseb.

The EPA's Office of Pesticide Programs, in conjunction with its Office of Research and Development and and EPA contractor, Research Triangle Institute conducted a feasibility analysis. The group evaluated disposal options to determine the best method in terms of technology, cost, and compliance with the Resource, Conservation and Recovery Act's, 42 U.S.C. § 6901 *et seq.*, (hereinafter RCRA), regulatory requirements. The EPA after review of the engineering and cost analysis, which was presented in the Research Triangle Institute's, July 1987, draft report, decided tentatively that incineration would be the best disposal method for dinoseb. In light of that decision the agency has recently conducted two (2) dinoseb test burns in an effort to obtain the necessary information on emissions and optimum operating conditions. These test results are not yet available. Nevertheless, the EPA is also still considering alternative methods of disposal.

In addition to working on resolution of the disposal technology, the EPA's initial inquiry causes the EPA to believe that it must seek out facilities that comply with the requirements of the RCRA because a significant portion of the dinoseb products that the EPA expects to accept for disposal will need to be handled pursuant to the hazardous waste requirements of the RCRA. The RCRA and its regulations impose strict requirements on all facilities that treat, store, or dispose of hazardous waste, including the requirement that the facilities obtain certain permits.

The EPA recognizes also that short term storage incident to disposal may become necessary. The EPA currently has identified ten (10) qualified facilities that might be interested in storing dinoseb. In November 1987, the EPA advertised again in *Commerce Business Daily* for contractors interested in furnishing interim storage. On January 4, 1988, the EPA issued a formal solicitation for bids for the decanning and storage of Uniroyal stock. The solicitations were sent to all previously identified potential contractors. No responses, however, were received. Consequently, the initial response deadline was thereafter extended to February 29, 1988. The EPA received three (3) responses within the extended solicitation period and is currently reviewing those responses. The EPA also published in *Commerce Business Daily* on May 18, 1988, a second solicitation for bids for the decanning and storage of other qualified dinoseb products.

On December 31, 1988, the EPA plans to commence accepting dinoseb products for disposal or interim storage if necessary. This date is based on estimates made by the EPA of the time needed to enter into contracts with the third parties who operate suitable RCRA permit disposal or interim storage facilities and the time required to coordinate transportation by the owners of the suspended and cancelled pesticides to one or more of these acceptable sites.

In addition to the above steps the EPA has also established guidelines and procedures necessary to insure that Uniroyal's dinoseb products currently stored in the warehouse at Port Clinton, Ohio, do not pose a danger to public safety or to the environment. Pursuant to this plan, EPA inspectors have visited the Port Clinton site. The inspection reports indicate that the dinoseb products are being stored in accordance with the EPA's recommended procedures.

The parties have filed cross-motions for summary judgment on each of plaintiff's claims. The court is mindful of the fact that it does not follow that the parties have necessarily submitted the issues to the court for final determination simply because both parties have moved for summary judgment. *See* 28 Fed.Proc., L.Ed. § 62:586 (1984). Simply put, this is not a case in which the parties agree that there are no material issues of fact. *Id.* Nor does it mean that if one motion for summary judgment is rejected that the other motion for summary judgment is necessarily justified. *Id.* Thus, the court may not grant either party's motion for summary judgment unless that party is entitled to a judgment as a matter of law upon facts that are not genuinely disputed after the court has made its own independent inquiry and found no material facts at issue. *Id.*

Each movant, under Rule 56(c), bears the burden of showing that no triable issues of material fact remain and that they are therefore entitled to a judgment in their favor, as a matter of law. A motion for summary judgment may be granted only where it is absolutely clear what the truth is and there remains no genuine issues as to fact. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed. 2d 458 (1962). In considering each party's motion, the court must "construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962).

■ The primary issue before the court concerns the interpretation of § 19(a) of the FIFRA, 7 U.S.C. § 136q(a), and more specifically, whether under the Act the EPA is required to *immediately* accept the pesticide upon request by the owner of a pesticide the registration of which has been cancelled. Section 19(a) in pertinent part states that the Administrator "shall ... accept at convenient locations for safe disposal a pesticide, the registration of which is cancelled...." 7 U.S.C. § 136q(a).

Plaintiff interprets the above section to mean that the Administrator must accept *immediately* upon request by the owner the suspended and cancelled pesticides, for storage if necessary pending the safe disposal of the pesticide by the government. The EPA, on the other hand, argues that the statute imposes upon it a duty to accept the products at issue only after it has made the necessary preparations to ascertain a convenient location for acceptance, as well, determined as a safe method of disposal. Thus, the EPA contends that the statute requires only that the agency act upon the owner's request to accept the product cancelled and suspended within a reasonable time. The EPA further argues that it has acted vigorously and responsibly to determine a feasible disposal method and to locate appropriate storage facilities. Accordingly, the EPA contends that it is in full compliance with its obligations under § 19(a) and is therefore entitled to summary judgment as a matter of law.

It is an established rule in this circuit that a statute must be construed to give meaning to each word. *Director, Office of Workers' Compensation Programs v. Goudy,* 777 F.2d 1122, 1127 (6th Cir.1986). Plaintiff argues that § 19(a) places no limitation upon the Administrator's obligation to accept for storage and disposal the pesticide products in question.

A review of the statutory language belies plaintiff's contention. The statutory language clearly obligates the Administrator to accept "at a convenient location" the suspended pesticide products "for safe disposal." 7 U.S.C. § 136q(a). Congress, therefore, has limited the EPA's obligation to accept a cancelled pesticide to the extent that such acceptance must comply with the following: 1. Be at a convenient location; and 2. for safe disposal. Under the current statutory scheme there is no requirement that prior to the suspension or cancellation of a pesticide that the EPA have at its disposal convenient locations and a proposed safe method of disposal of the cancelled pesticide products. Likewise, the Act contains no express time limitations within which the EPA must execute its duty to accept the cancelled pesticides. Congress, therefore, did not contemplate that time was of the essence. Congress could only have intended that the agency be afforded a reasonable time within which to determine convenient locations and a method of safe disposal.

During the passage of this reasonable time, the EPA is obligated to promulgate, after consultation with other interested federal agencies procedures and regulations for the disposal or storage of the cancelled pesticides which will insure the safety of humans and the environment. *See* 7 U.S.C. § 136q(a), Section 19(a) of the FIFRA. To require that the EPA immediately upon request of the holders of a cancelled pesticide accept for storage the pesticides without an opportunity to determine a safe method of disposal and/or to obtain appropriate storage facilities would defeat the statutory purpose of insuring the safety of humans and the environment, as well as shift the responsibility of storage costs from the owners to the EPA. Either result is not only inconsistent with the congressional intent, the caselaw, but also the express wording of the statute. The statutory purpose can adequately be accomplished by the EPA's dual statutory obligation of cancelling the registration of a pesticide where its safe use is questionable and thereafter its establishment of procedures and regulations for storage of the cancelled pesticide during the passage of a reasonable time within which the EPA must identify a safe disposal method and obtain convenient locations for such disposal and/or interim storage. For these reasons this court concludes that the duty imposed upon the agency is to act within a reasonable time rather than immediately upon the request of the owner of the cancelled pesticide.

The remaining issue to be decided by this court is whether the EPA has acted consistent with its statutory duty to accept within a reasonable time "at a convenient location for safe disposal a pesticide the registration of which is cancelled under § 136d(c) of [the] title if requested by the owners of the pesticide." *Id.* In light of the undisputed facts recited by the parties this court can only conclude that the EPA in fact has acted in a manner to insure that within a reasonable time it will assume its statutory responsibility to accept, as requested by Uniroyal, the cancelled pesticide products at a convenient location for safe disposal. Accordingly, this court finds that there are no triable issues of material fact, and as a matter of law, the EPA is entitled to a grant of its motion for summary judgment in its favor and against plaintiff.

IT IS THEREFORE

ORDERED that plaintiff's motion for summary judgment in its favor and against defendant is denied;

FURTHER ORDERED that defendant's motion for summary judgment in its favor and against plaintiff is granted;

FURTHER ORDERED, ADJUDGED AND DECLARED that defendant's intent to accept on or before December 31, 1988, for disposal and/or interim storage the One Million Six Hundred Seventy-five Thousand Three Hundred Ten (1,675,310) gallons of dinoseb products that were subject to the Administrator's October 7, 1986 order is reasonable;

FURTHER ORDERED that this case is dismissed at plaintiff's costs.