**BOWLING GREEN JR. COLLEGE, Plaintiff,**

v.

**U. S. DEPARTMENT OF EDUCATION, et al., Defendants.**

**No. C 88–0005–BG(B).**

United States District Court, W.D. Kentucky, Louisville Division.

April 8, 1988.

Robert Stephen Butler, Memphis, Tenn., Lee Huddleston, Bowling Green, Ky., for plaintiff.

Stephen Kraut, Office of General Counsel, Dept. of Educ., Washington, D.C., James Barr, Asst. U.S. Atty., Louisville, Ky., for defendants.

## MEMORANDUM

BALLANTINE, District Judge.

This matter is before the Court on motion of the plaintiff, Bowling Green Junior College, Inc., for entry of a preliminary injunction in its declaratory judgment action against the defendants, the U. S. Department of Education and William Bennett, the Secretary of the U.S. Department of Education, and on motion of the defendants for dismissal for lack of subject matter jurisdiction or, alternatively, for entry of summary judgment. Fed.R.Civ.P. 12(b)(1), 56(b).

The material facts in this case are undisputed.

Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070–1098, was enacted to assist in making available to eligible students a post-secondary education by authorizing student grants and other financial aid programs. 20 U.S.C. § 1070(a). In order to participate in Title IV federal financial assistance programs, an educational institution must enter into a Participation Agreement with the Secretary of Education (the Secretary). Title 20 U.S.C. § 1094. In this agreement, the college or university consents to abide by all statutory, regulatory and program requirements for obtaining funds, such as submission of periodic reports to the Secretary and maintaining administrative and fiscal procedures and records to ensure proper administration of funds. Title 20 U.S.C. § 1094(a).

Bowling Green Junior College participates in the Pell Grant Program,[1] 20 U.S.C. § 1071(a), 34 C.F.R. § 690, and certain "campus based" programs such as the Supplemental Educational Opportunity Grant (SEOG) Program, 20 U.S.C. §§ 1070b et seq., 34 C.F.R. 676, the Perkins Loan Program, 20 U.S.C. §§ 1087aa et seq., 34 C.F.R. § 674, and the College Work Study (CWS) Program, 42 U.S.C. §§ 2751 et seq., 34 C.F.R. § 675. Other student loans are not in issue because those funds are provided directly to the student.

There are two alternative payment systems. Under the advance method, the institution may withdraw requested funds as needed from an account set up in the Central Finance Office. The Finance Officer will then disburse funds electronically. The other system involves one in which the institution must first submit supporting documentation before funds can be transferred.

In order to ensure compliance with the Participation Agreement, the Department may authorize certain supervisory reviews, or audits, of an institution's operations. On site reviews to examine administrative records of the school may also be conducted. 34 C.F.R. § 668.12. These reviews enable the Department to determine if funds have been spent improperly, so that suspension, limitation or termination procedures may be instituted. 34 C.F.R. §§ 668.81–668.97. Although the regulations do not establish criteria by which the Secretary may switch an institution from

---

1. The Pell Grant Program provides direct financial assistance to qualifying students. Because of the infeasibility of central administration of the programs, they are administered pursuant to an agreement between the Department of Education (the Department) and the institution whereby the Department agrees to pay funds periodically, in advance or by reimbursement, to the institution to provide for students' disbursements. 34 C.F.R. §§ 690.71–690.84.

an advance method of payment to a method of payment by reimbursement, it is authorized clearly by Title 20 U.S.C. § 1226a-1, The General Education Provisions Act:

Payments pursuant to grants or contracts under any applicable program may be made in installments, and in advance or by way of reimbursement, with necessary adjustments on account of overpayments or underpayments, as the Secretary may determine.

In addition, 34 C.F.R. § 674.4(c), § 675.4(c), and § 676.4(c), each provides:

The Secretary allocates funds for a specific period of time. The Secretary pays funds to an institution in advance or by reimbursement. The Secretary bases the amount to be paid on periodic fiscal reports.

34 C.F.R. § 690.74 contains similar language.

On February 10, 1987, a team of reviewers from the Department's Office of Inspector General (OIG) arrived on the campus for an on-site inspection that lasted until February 20 and covered the period of July 1, 1983, to February 20, 1987. The official investigation report states that the college has consistently failed to make refunds to lenders and the respective student financial aid programs as required by law since their Settlement Agreement of May 10, 1984. That Agreement had itself been preceded by a joint OIG/FBI investigation that revealed attendance records had been falsified, loan applications were falsely certified, student checks were altered, and that there were satisfactory performance violations concerning 20% of a student sampling. The report states, among other violations, that the College permitted students to complete a 2-year program in 5 years, did not require students to complete a certain minimum amount of credit hours per year, failed to establish an adequate satisfactory progress policy as provided in the Settlement Agreement, failed to design and implement an adequate system of internal accounting and audit controls, and failed in other ways to abide by the Settlement Agreement. The report states that although the results of this investigation were discussed with the U.S. Attorney's Office in Louisville, criminal prosecution was deferred in favor of administrative and civil action by the Education Department.

On April 10, 1987, Barry S. Buntemps, Acting Director of Financial Management Service in Washington, D.C., informed the college in writing that it would be transferred to a reimbursement method of payment, effective immediately, as a result of the continuously delinquent refunds due to the Department, and other problems. Robert Stephen Butler, counsel for the College, requested an informal meeting with the Inspector General and other officials to discuss the change. On May 22 that meeting was held, and on May 27, Mr. Butler informed the Financial Management Service Office in Washington, D.C. of procedures the College was implementing to ensure that timely refunds would be made.

On July 1, 1987, another Participation Agreement was signed and on August 10 the Department informed the College that it would remain on the present system of payment by reimbursement and additionally provided a list of documents needed for obtaining Pell Grants. On September 14 the Department gave written instructions on how the institution could obtain reimbursement for the campus-based funds. Two weeks earlier, however, the Department sent written notice of its intent to initiate termination proceedings in accordance with 34 C.F.R. § 668.86, based on the February review.[2] Submissions for reimbursement were made on October 19, 1987, but were denied, purportedly based on discrepancies of 40% of the cases submitted. By letter dated November 25, 1987, the Department assigned the College an error rate of no more than 5%.

Since this Court's hearing on February 11, 1988, the defendants submit that $83,185 in Pell Grant funds have been authorized to be paid to the College, covering the period from April 10 to September 26, 1987.

**2.** The decision whether to terminate eligibility currently is pending before an administrative law judge, after a hearing which was held January 11 to January 15, 1988.

The Court will now address the defendants' motions to dismiss and for summary judgment.

The College argues that the change to a reimbursement method exceeded the authority of Title 20 U.S.C. §§ 1070a and 1094, and violated its due process rights.[3] In response to this argument, the defendants contend that the College lacks standing to bring this action and therefore this Court lacks jurisdiction under *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), and *Jet Courier Services v. Federal Reserve Bank*, 713 F.2d 1221 (6th Cir.1983). See also *Dominion National Bank v. Olsen*, 771 F.2d 108 (6th Cir.1985). These cases illustrate that both constitutional and prudential considerations exist in invoking a federal court's jurisdiction. A minimum requirement of Article III of the U.S. Constitution is that the party "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury can "fairly be traced to the challenged action" and is "likely to be redressed by a favorable decision." 454 U.S. at 472, 102 S.Ct. at 758. The prudential considerations require that the plaintiff assert his own legal rights and interests and not base his claim on the rights of third parties. Other prudential considerations require that the federal courts refrain from "abstract questions of wide public significance" and that the plaintiff's complaint fall within the "zone of interests" to be protected by the statute or constitutional guarantee in issue. 454 U.S. at 474–75, 102 S.Ct. at 759. In deciding the standing issue, all material allegations of the complaint are to be taken as true. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). An indirect injury does not necessarily deprive a person of the requisite standing, as long as the injury is traceable to the challenged activity and one

that the requested remedy will be likely to redress. *Warth, supra.*

Taking the constitutional requirements first, the College argues that the allegedly unconstitutional change to a reimbursement payment method has caused it to be operating on the verge of bankruptcy. That is, its "actual or threatened injury" that can "fairly be traced to the challenged action." Apparently the change back to an advance method would "redress" its financial injuries, thus satisfying the third requirement. The only evidence of insolvency is that which has been offered by the affidavit of J. R. Rippetoe, the Chairman of the Board of Directors of the College, and that of J. W. McMurray, a C.P.A. with Chipman and McMurray accounting firm. Mr. McMurray states that the liabilities exceed current assets by $518,615, and the College is insolvent.

As one of the prudential requirements, the College argues that it is protecting its own rights and interests in the Title IV programs pursuant to the Program Participation Agreements executed April 4, 1983, and July 1, 1987. However, its entitlement to participation in the Title IV programs is unaffected by the change to a reimbursement system. It still will receive only the amount of funds to which it is entitled, regardless of the method of payment. The College has also failed to allege and show how it is within the "zone of interest" to be protected by Title 20 U.S.C. § 1070a(a)(1), and § 1094, which the College alleges have been violated. The purpose of Title 20 U.S.C. § 1070 *et seq.* is to provide by grants and loans assistance to eligible students of higher education. Title 20 U.S.C. § 1070a(b)(1), § 1070b(a), § 1070a(a)(1)–(5). It is apparent from a reading of the statute that it was intended to benefit the student, and not the institution. Although the Court is troubled by these two prudential considerations, the motion of the defendants to dismiss will be denied. The facts of this case indicate that there have been no

---

**3.** Title 20 U.S.C. § 1070a authorizes the payment of Basic Educational Opportunity Grants, now called Pell Grants, by the Secretary to eligible students. Title 20 U.S.C. § 1094 requires the institution to enter into a Program Participation Agreement, authorizes the Secretary to prescribe regulations, and authorizes suspensions and terminations after an evidentiary hearing if the institution has made substantial misrepresentations.

constitutional or statutory violations by the actions of the Department, in any event.

Title 20 U.S.C. § 1226a–1 of the General Education Provisions Act clearly grants the Secretary discretion in determining the method of payment. The Secretary is given wide authority in construing the Act's provisions and promulgating regulations thereunder. 20 U.S.C. § 1221e–3(a)(1). *Beth Rochel Seminary v. Bennett*, 825 F.2d 478 (D.C.Cir.1987). Although there are no regulations determining the procedures to be followed in effecting the change to a reimbursement system, the College argues that due process requires notice and a hearing prior to its implementation. The College does not deny the criminal investigation of the College and the guilty plea of its former owner/president, who is currently Chairman of the Board. A Report of Investigation of the Office of Inspector General, in June, 1987, prompted by an anonymous complaint and interviews with former and present employees, indicates that on May 14, 1984, James R. Rippetoe plead guilty on behalf of the College to an eight-count information charging violations of Title 18 U.S.C. § 1001 (making a false statement to a government agency). Fines and restitution were imposed. The College has had abundant notice of its failure to comply with the appropriate regulations. When the Department gave notice on April 10, 1987, of the immediate change, it explained that this was due to the continuing problem of delinquent refunds. Although not required by law, the Department met with representatives of the institution in Washington, D.C.[4] The College in addition was permitted to submit written arguments afterward. The College was then notified in August that it would remain on the current system, and was given written instructions for submitting the necessary documentation for reimbursement. Under these circumstances, no statute or regulation was violated.

Additionally, the College argues that it has a property interest in participation in Title IV programs and a liberty interest in the right to conduct business and that these rights were violated under the Fifth Amendment. However, the actions of the Department did not interfere with its entitlement to participate in the programs; it only altered the method of payment. The College has no property right to the funds as it acts only as a fiduciary in dispersing the funds to its eligible students. 34 C.F.R. § 668.82. The purpose of these Title IV programs is not to keep an institution in business, but to assist its students in gaining a post-secondary education.

The College places emphasis on the word "advance" in the Participation Agreement as implying that funds must necessarily precede proof of entitlement. The Court does not interpret the agreement so narrowly. Article II, Paragraph 2, simply provides that the institution agrees to use the funds advanced to it only in accordance with the appropriate statutes and regulations. In construing contracts, its terms are to be interpreted and their legal effects determined by consideration of the agreement as a whole. *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 570 F.2d 554 (6th Cir.1978). Similarly, the reference to the phrase "advanced to eligible institutions" in Title 20 U.S.C. § 1070a(a)(1), concerning Pell Grants, was not meant to be interpreted as prohibiting reimbursement. Such a construction would render meaningless the Secretary's broad authorization under Title 20 U.S.C. § 1226a–1 and the applicable code provisions to determine the method of payment. Statutes must be read and construed as a whole, and in not such a way which renders parts of them meaningless. *United States v. Jones*, 811 F.2d 444 (8th Cir.1987). *Director, Office of Workers' Compensation Programs, United States Dept. of Labor v. Goudy*, 777 F.2d 1122 (6th Cir.1985).

In light of the foregoing discussion and because the material facts are not in dispute, the Court finds no constitutional or statutory violation stemming from the action taken April 10, 1987, and the defend-

---

**4.** A hearing on the record is only required for limitations, suspensions and terminations of an institution's eligibility. Title 20 U.S.C. § 1094(c)(1)(D).

ants' motion for summary judgment will be granted. Fed.R.Civ.P. 56(b). *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978).

The Court's holding renders the College's motion for a preliminary injunction moot and it will be denied.

## ORDER

For the reasons set forth in the memorandum filed this date,

IT IS ORDERED that the motion of the plaintiff, Bowling Green Jr. College, for a preliminary injunction in its declaratory judgment action against the defendants, the U. S. Department of Education and William Bennett, be and it is hereby denied.

IT IS FURTHER ORDERED that the motion of the defendants to dismiss for lack of subject matter jurisdiction be and it is hereby denied.

IT IS FURTHER ORDERED that the motion of the defendants, U. S. Department of Education and William Bennett, for entry of summary judgment on the complaint of the plaintiff, Bowling Green Jr. College, against them be and it is hereby granted, and this action be and it is hereby dismissed with prejudice.

There is no just reason for delay, and this is a final and appealable order.