**BURBANK COLLEGE OF COURT REPORTING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–350C.**

United States Claims Court.

June 22, 1992.

Cyril L. Lawrence, Merced, Cal., for plaintiff.

Steven J. Gillingham, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Stephen M. Kraut, Dept. of Educ., of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court on plaintiff's motion for summary judgment. Defendant has opposed and moved for suspension of the matter pending completion of an audit of plaintiff's records. Argument is deemed unnecessary.

## FACTS

John and Dorothea Hatch are directors of Burbank College of Court Reporting, Inc. ("plaintiff"), formerly Westland College. Beginning in 1984 plaintiff participated in several loan and grant programs administered by the Department of Education ("Education").

*Statutory and regulatory framework*

Education directs various financial aid programs that provide financial assistance to students at accredited educational institutions.[1] 20 U.S.C. §§ 1070–1099 (1988); 34 C.F.R. §§ 668, 674–76, 682, 690 (1985). Education and educational institutions normally enter into a Program Participation Agreement ("PPA") which provides that the institution will be bound by federal student financial aid statutes and regulations. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.12.

Institutions receive student financial aid funds under either the advance payment or reimbursement systems. 20 U.S.C. § 1226a–1; 34 C.F.R. §§ 674.4(c), 675.4(c), 676.4(c), 690.74. Under the former an institution receives funds in advance of disbursement to students. Under the latter the institution must first advance its own funds to students and then apply for reimbursement from Education. *Id.*

Education monitors institutional compliance with the PPAs and the various statutes and regulations through program reviews and independent audits. In a program review, an OSFA employee "examines an institution's records to determine whether the institution is properly administering ... [financial aid] programs...." Declaration of Ronald Lipton, Mar. 25, 1992, ¶ 4.[2] Moreover, institutions must conduct biennial audits. 20 U.S.C. § 1094(c)(1)(A)(iii); 34 C.F.R. §§ 674.19(g), 675.19(e), 676.19(e), 690.84(b). Institutions must also submit audits within 45 days of closing or loss of eligibility to receive federal funds. 34 C.F.R. § 668.20(a)(3)(ii).

*Plaintiff's financial aid program*

On February 13, 1985, plaintiff entered into a PPA with OSFA.[3] The agreement provided:

1. a. The institution understands and agrees that it is subject to the program statute and implementing regulations for each program in which it participates, as well as the Student Assistance General Provisions, title IV, Part F of the Higher Education Assistance Act, and the Student Assistance General Provisions regulations, 34 C.F.R. Part 668.

b. The Institution agrees to use the funds advanced to it ... solely for the purpose specified in, and in accordance with the provisions ... [of the above statutes and regulations]. The Institution further agrees to properly account for the funds it receives....

From August 12–16, 1985, Education conducted a program review of plaintiff's stu-

---

1. The Office of Student Financial Assistance ("OSFA") administers the day-to-day operations of the various student financial aid programs.

2. Program reviews are apparently conducted at the discretion of the Secretary. *See, e.g.,* 34 C.F.R. § 668.12(b)(3), (c)(3) (institutions shall give the Secretary access to their records which shall be readily available for review).

3. Plaintiffs signed the PPA on August 20, 1984. The later date reflects the date on which Education signed the PPA.

dent financial aid program. The review disclosed that plaintiff had violated PPA requirements. On October 21, 1985, Education changed plaintiff to the reimbursement system.

Under the reimbursement system, Education provides funds to an institution "based on the Secretary's determination of the institution's ... need for reimbursement *for Pell Grants already paid.*" 34 C.F.R. § 690.74 (emphasis added). The Secretary's determination is based upon financial and student records provided by the institution sufficient to prove that disbursement of the funds was properly made. 20 U.S.C. § 1094(c)(1)(A)(i-ii); *Bowling Green Jr. College v. United States Dept. of Educ.,* 687 F.Supp. 293, 294 (W.D.Ky.1988). Approval of a reimbursement request is made in Washington, D.C., through the Program Compliance Branch.

To receive reimbursement for financial aid funds advanced to students, plaintiff was informed by letter dated August 21, 1985, that it was to submit monthly cash requests to Education attaching the following:

1) [A] list of students ... who have received disbursements or who have had their accounts credited and for whom the school does not have Title IV cash on hand.

2) The social security number of each student on the list.

3) The amounts by program, paid to or credited to each student on the list.

4) A statement signed by each student acknowledging that he or she has received the funds indicated or that his or her account has been credited. The statement must contain the specific amounts for each student included in item 3.

5) A general statement signed by an appropriate school official certifying that each of the students on the list was eligible for the amounts shown on the list and that the funds were either paid to the student and/or credited to the student's account. The appropriate school official must also certify that detailed fiscal records that support the amounts credited or paid are available for audit and that the students' ledgers show these and all other fiscal transactions between the students and the school.

In the same letter, Education further advised plaintiff that it had disbursed

$222,000, in excess of amounts paid to students or credited to their accounts ... from the school's Federal student assistance bank account and used for unauthorized purposes. Your cash requests will not be honored until you demonstrate that students have been paid or their accounts credited in an amount that is equivalent to the excess amounts taken from the Federal student assistance bank account.

Pursuant to this revised reimbursement payment system, from September 1985 to February 1986, plaintiff advanced students $1,267,315.00 in student loan funds. During this period plaintiff submitted to Education five Form ED 874 cash requests for reimbursement of the loan funds advanced.[4]

In October 1985 a certified public accountant audited a small sampling of loan funds advanced to students. As of October 31, 1985, the auditor verified, by an examination of plaintiff's financial aid records and random telephonic contact with students, "the accuracy of [plaintiff's] ... accounts ... including that portion which was considered to be owed by [Edu-

---

**4.** The dates and amounts of the requests are, as follows:

| DATE | AMOUNT REQUESTED |
| --- | --- |
| September 25, 1985 | $138,814.00 |
| October 13, 1985 | $148,862.00 |
| December 4, 1985 | $ 89,330.00 |
| January 27, 1986 | $636,245.00 |
| February 10, 1986 | $ 31,644.00 |

cation]." [5] Deposition of James Richard Jorgensen, June 27, 1991, at 50.[6]

On October 11, 1985, plaintiff informed Education of Westland College's impending sale to William Kettle ("Kettle"). Education replied that Kettle could not receive reimbursement of any funds due unless Westland College submitted an audit. Kettle agreed to this requirement. On November 15, 1985, plaintiff sold Westland College to Kettle's company, Sierra Educational Investments, Inc. ("Sierra"). Subsequently, Sierra informed the California State Department of Education that Sierra would honor all of Westland College's contracts and agreements.

On November 27, 1985, Education sent plaintiff a comprehensive report entitled "A Review of the Federal Student Aid Programs," detailing the findings and recommendations arising out of Education's August 1985 program review. In this report OSFA observed that the school "was using Federal Title IV student financial aid funds for unauthorized purposes" and that "[t]he school drew Title IV cash in excess of immediate disbursing needs...." [7] Education required Westland College to "engage a CPA firm to determine the exact amount of excess Federal cash withdrawn from the institution's Student Assistance bank account." The report requested that plaintiff respond in writing within 30 days. On December 18, 1985, Education, citing the November 1985 report, informed plaintiff that it intended to terminate plaintiff's eligibility to participate in Title IV programs.

On December 30, 1985, plaintiff filed a response to the November 1985 report. Plaintiff asserted that it had retained a CPA firm to conduct an audit. The firm promised to complete the audit by February 1, 1986, with additional "reconstructions" moving the finishing date to February 28, 1986.[8] On January 10 and 23, 1986, Education confirmed the completion date and reminded plaintiff that Education would not release reimbursement funds until plaintiff's CPA completed an audit.[9]

On February 19, 1986, OSFA conducted a subsequent review of school records.[10] OSFA found numerous accounting irregularities in plaintiff's requests. Plaintiff had over-disbursed Pell Grant funds to students, inaccurately credited students' accounts, and disbursed funds to students not eligible for federal financial assistance. A

5. Plaintiff further alleged that each of the cash requests contained the required student eligibility and accounting documentation. However, plaintiff did not provide any documentation indicating that each cash request in fact conformed to Education's requirements.

6. Plaintiff did not submit a written copy of the audit or a summary of its findings, relying instead on an excerpted portion of the auditor's deposition. The court, therefore, does not have the benefit of a complete analysis of the audit. Moreover, the court recognizes that the audit could only assess plaintiff's compliance with Education's financial aid requirements as of October 31, 1985. Consequently, the audit cannot speak to the accuracy of plaintiffs' three cash requests made after that date.

7. Plaintiff could not account for $222,645.00 in student financial aid funds.

8. On January 7, 1986, plaintiff's attorney reiterated this completion date. Plaintiff, however, did not complete the audit and contends that it could not, and cannot, perform the audit because Education, pursuant to a grand jury investigation, seized the relevant records.

Defendant responds, however, that the records were produced voluntarily and could have been copied before their removal. Moreover, it appears that plaintiff never asked for the records until the discovery phase of this lawsuit. In any event, plaintiff has not established that the records taken by Education are required or sufficient to perform an audit.

9. According to a special agent with Education's Office of the Inspector General, Westland College did retain a CPA to conduct an audit. The CPA found that from 1983–85 Westland College received approximately $900,000.00 for which it could not account. When the accountant advised plaintiff of this, plaintiff requested her to stop the audit.

10. An OSFA official recommended approval of both the September 30 and October 3, 1985 cash requests after making minor accounting changes. Plaintiff contends that this recommendation entitles plaintiff to the amounts sought in September and October. The official conceded, however, that he did not have the ultimate authority to recommend payment.

summary report stated that "[t]he $1,267,-315 which Westland College [plaintiff] certifies it credited to students' accounts is not an accurate representation of monies due the college under the reimbursement method of funding. . . ."

An OSFA program reviewer reported the accounting irregularities to Education's Office of the Inspector General. As a result, the Office of the Inspector General began an investigation of Westland College for fraud.

In April 1986 Education notified Westland College that it was no longer eligible to participate in numerous federal student financial aid programs. In the Spring of 1986 Westland College closed.

## DISCUSSION

Plaintiff moved for summary judgment, arguing that it has fulfilled all requirements of the PPA and, therefore, is entitled to reimbursement. Defendant contends that the amount of reimbursement, if any, is at present unknown because plaintiff failed to conduct audits mandated in 34 C.F.R. §§ 668.20 and 690.84(b). Consequently, defendant asks this court to suspend consideration of plaintiff's motion for summary judgment and order plaintiff to conduct the required audits or, in the alternative, to deny plaintiff's motion because material facts are in dispute.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Defendant argues that the court cannot decide whether plaintiff's claims are factually unsupported until a CPA performs an audit of plaintiff s student financial aid records. Defendant asserts that an audit will demonstrate how much is due each party.

Institutions must submit audits to Education in three discrete situations: 1) every two years regardless of financial well-being; 2) when the institution loses its eligibility to receive federal student aid; and 3) when the institution stops providing educational instruction. 34 C.F.R. §§ 668.20, 690.84. Plaintiff failed to conduct biennial audits. Defendant has made a showing that by the summer of 1986 Westland College became obligated to conduct further audits based both on a loss of eligibility for federal aid and the closing of the college.

The promulgating regulations permit Education to reimburse funds only upon a determination that the applicable expenses have been properly paid. "The Secretary provides funds . . . based on the Secretary's determination of the institution's . . . need for reimbursement." 34 C.F.R. § 690.74. Here, because of the questions raised by plaintiff's alleged mismanagement of student financial aid funds, Education has insisted that the statutorily mandated audits be undertaken before plaintiff is reimbursed. In making this determination, the Secretary may exercise broad discretion. *Pender Peanut Corp. v. United States*, 20 Cl.Ct. 447, 451–52 (1990) (citing *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

Plaintiff contends that it is due reimbursement. Defendant counters, and plaintiff does not dispute, that the statutorily required biennial and closing audits have not been submitted to Education. Defendant asserts that plaintiff misappropriated student financial aid funds received from Education. In this regard, Education, pursuant to applicable regulations, determined that plaintiff should not be reimbursed before an audit of the student financial aid funds has been submitted. This court agrees.

## CONCLUSION

Accordingly, based on the foregoing,

IT IS ORDERED, as follows:

1. Defendant's motion to suspend consideration of plaintiff's motion for summary judgment is granted pending an audit of Burbank College of Court Reporting's (Westland College's) student financial aid records.

2. If any documents needed for the audit are in Education's custody, Education

shall make such documents available to the auditor.

3. This matter is stayed pending completion of the audit, or September 30, 1992, when defendant shall submit a Status Report, whichever is later.