**BURBANK COLLEGE OF COURT REPORTING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–350C.**

United States Court of Federal Claims.

Nov. 24, 1993.

Cyril L. Lawrence, Merced, CA, for plaintiff.

Steven J. Gillingham, Washington, DC, with whom was Asst. Atty. Gen. Frank W.

---

Hunger, for defendant; Stephen M. Kraut, Dept. of Educ., of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion to dismiss the complaint for failure to comply with a court order. Previously, the court ordered plaintiff to complete an audit of student financial aid records. Plaintiff takes the position that it has performed an acceptable audit; defendant demurs.

## FACTS

Some of the following facts are restated from the court's opinion dated June 22, 1992. *Burbank College of Court Reporting, Inc. v. United States*, 26 Cl.Ct. 323 (1992) (order granting defendant's motion for audit). John and Dorothea Hatch (the "Hatches") are directors of Burbank College of Court Reporting, Inc. ("Burbank" or "plaintiff"), formerly Westland College.[1] Beginning in 1984 plaintiff participated in several loan and grant programs administered by the Department of Education ("Education").

Education directs various programs that provide financial aid to students at accredited educational institutions.[2] 20 U.S.C. §§ 1070–1099 (1988); 34 C.F.R. §§ 668, 674–76, 682, 690 (1985). Education and instructional institutions normally enter into a Program Participation Agreement ("PPA"), which provides that the institution will be bound by federal student financial aid statutes and regulations. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.11.

Institutions receive student financial aid funds under either the advance payment or reimbursement systems. 20 U.S.C. § 1226a–1; 34 C.F.R. §§ 674.4(c), 675.4(c), 676.4(c), 690.74. Under the former, an institution receives funds in advance of disbursements to

students and then applies for reimbursement from Education. *Bowling Green Jr. College v. United States Dept. of Educ.*, 687 F.Supp. 293, 294 (W.D.Ky.1988).

Education monitors institutional compliance with the PPAs and the various statutes and regulations through program reviews and independent audits. In a program review, an OSFA employee "examines an institution's records to determine whether the institution is properly administering ... [financial aid] programs...." Declaration of Ronald Lipton, Mar. 25, 1992, ¶ 4.[3] Moreover, institutions must conduct biennial audits. 20 U.S.C. § 1094(c)(1)(A)(i-ii); 34 C.F.R. §§ 674.19(g), 675.19(e), 676.19(e), 690.84(b). Institutions must also submit audits within 45 days of closing or lose eligibility to receive federal funds. 34 C.F.R. § 668.20(a)(3)(ii).

On February 13, 1985, plaintiff entered into a PPA with OSFA.[4] The agreement provided:

1.a. The institution understands and agrees that it is subject to the program statute and implementing regulations for each program in which it participates, as well as the Student Assistance General Provisions, title IV, Part F of the Higher Education Assistance Act, and the Student Assistance General Provisions regulations, 34 C.F.R. Part 668.

b. The Institution agrees to use the funds advanced to it solely for the purpose specified in, and in accordance with the provisions ... [of the above statutes and regulations]. The Institution further agrees to properly account for the funds it receives....

From August 12–16, 1985, Education conducted a program review of plaintiff's student financial aid program. The review disclosed that plaintiff had violated PPA re-

---

1. "Plaintiff" includes almost all references to Westland College.

2. The Office of Student Financial Assistance ("OSFA") administers the day-to-day operations of the various student financial aid programs.

3. Program reviews are apparently conducted at the Secretary's discretion. *See, e.g.,* 34 C.F.R.

§ 668.12(b)(3) (1985) (institutions shall give the Secretary access to their records which shall be available for review).

4. Plaintiff signed the PPA on August 20, 1984. The later date reflects the date on which Education signed the PPA.

quirements. On October 21, 1985, Education changed plaintiff to the reimbursement system.

Under the reimbursement system, Education provides funds to an institution "based on the Secretary's determination of the institution's ... need for reimbursement *for Pell Grants already paid.*" 34 C.F.R. § 690.74 (emphasis added). The Secretary's determination is based upon financial and student records provided by the institution which show proper disbursement of student aid funds. 20 U.S.C. § 1094(c)(1)(A)(i-ii); *see, e.g., Bowling Green,* 687 F.Supp. at 294. Approval of a reimbursement request is made in Washington, D.C., through the Program Compliance Branch.

To receive reimbursement for financial aid funds advanced to students, plaintiff was informed by letter dated August 21, 1985, that it was to submit monthly cash requests to Education attaching the following:

1) [A] list of students ... who have received disbursements or who have not had their accounts credited and for whom the school does not have Title IV cash on hand.

2) The social security number of each student on the list.

3) The amounts by program, paid to or credited to each student on the list.

4) A statement signed by each student acknowledging that he or she has received the funds indicated or that his or her account has been credited. The statement must contain the specific amounts for each student included in item 3.

5) A general statement signed by an appropriate school official certifying that each of the students on the list was eligible for the amounts shown on the list and that the funds were either paid to the student and/or credited to the student's account. The appropriate school official must also certify that detailed fiscal records that support the amounts credited or paid are available for audit and that the student's ledgers show these and all other fiscal transactions between the students and the school.

In the same letter, Education further advised plaintiff that

approximately $222,000 in excess of amounts paid to students or credited to their accounts ... had been disbursed from the school's Federal student assistance bank accounts and used for unauthorized purposes. Your cash requests will not be honored until you demonstrate that students have been paid or their accounts credited in an amount that is equivalent to the excess amounts taken from the Federal student assistance bank account.

Pursuant to this revised reimbursement payment system, from September 1985 to February 1986, plaintiff submits that it advanced students $1,267,315.00 in student grant funds. During this period plaintiff submitted to Education five Form ED 874 cash requests for reimbursement of the loan funds received.[5]

In October 1985 a certified public accountant ("C.P.A.") audited a small sampling of grant funds advanced to students. As of October 31, 1985, the auditor verified, by an examination of plaintiff's financial aid records and random telephonic contact with students, "the accuracy of [plaintiff's] ... accounts ... including that portion which was considered to be owed by [Education]."[6] Deposition of James Richard Jorgensen, C.P.A., June 27, 1991, at 50.[7]

---

**5.** The dates and amounts of the requests are, as follows:

| DATE | AMOUNT REQUESTED |
| --- | --- |
| September 25, 1985 | $138,814.00 |
| October 13, 1985 | $148,862.00 |
| December 4, 1985 | $ 89,330.00 |
| January 27, 1986 | $636,245.00 |
| February 10, 1986 | $ 31,644.00 |

**6.** Plaintiff further alleged that each of the cash requests contained the required student eligibility and accounting documentation. However, plaintiff did not provide any documentation indi-

cating that each cash request conformed to Education's requirements.

**7.** Plaintiff did not submit a written copy of the audit or a summary of its findings, relying instead on an excerpted portion of the auditor's deposition. The court, therefore, does not have the benefit of a complete analysis of the audit. Moreover, the court recognizes that the audit could only assess plaintiff's compliance with Education's financial aid requirements as of October 31, 1985. Consequently, the audit cannot

On October 11, 1985, plaintiff informed Education of Westland College's impending sale to William Kettle. Education replied that Mr. Kettle could not receive reimbursement for any funds due unless plaintiff submitted an audit. Mr. Kettle agreed to this requirement. On November 15, 1985, plaintiff was sold to Mr. Kettle's company, Sierra Educational Investments, Inc. ("Sierra"). Subsequently, Sierra informed the California State Department of Education that Sierra would honor all of plaintiff's contracts and agreements.

On November 27, 1985, Education sent plaintiff a comprehensive report entitled "A Review of the Federal Student Aid Programs," detailing the findings and recommendations arising out of Education's August 1985 program review. In this report OSFA observed that the school "was using Federal Title IV student financial aid funds for unauthorized purposes" and that "[t]he school drew Title IV cash in excess of immediate disbursing needs...."[8] Education required plaintiff to "engage a CPA firm to determine the exact amount of excess Federal cash withdrawn from the institution's Student Assistance bank account." The report requested that plaintiff respond in writing within 30 days. On December 18, 1985, Education, citing the November 1985 report, informed plaintiff that it planned to terminate plaintiff's eligibility to participate in Title IV programs.

On December 30, 1985, plaintiff filed a response to the November 1985 report.

Plaintiff asserted that it had retained a C.P.A. firm to conduct an audit. The firm promised to complete the audit by February 1, 1986, with additional "reconstructions" moving the finishing date to February 28, 1986.[9] On January 10 and 23, 1986, Education confirmed the completion date and reminded plaintiff that Education would not release reimbursement funds until plaintiff's C.P.A. completed an audit.[10]

On February 19, 1986, OSFA conducted another review of school records.[11] OSFA found numerous additional accounting irregularities in plaintiff's requests. Plaintiff had over-disbursed Pell Grant funds to students, inaccurately credited students' accounts, and disbursed funds to students not eligible for federal financial assistance. A summary report stated that "[t]he $1,267,315 which ... [plaintiff] certifies it credited to students' accounts is not an accurate representation of monies due the college under the reimbursement method of funding...." An OSFA program reviewer reported the accounting irregularities to Education's Office of the Inspector General. As a result, the Office of the Inspector General began a fraud investigation of plaintiff.

In April 1986 Education notified plaintiff that it was no longer eligible to participate in numerous federal student financial aid programs. In the spring of 1986, plaintiff closed.

On April 23, 1990, the Hatches filed their complaint with the United States Claims

---

speak to the accuracy of plaintiff's three cash requests made after that date.

8. Plaintiff could not account for $222,645.00 in student financial aid funds.

9. On January 7, 1986, plaintiff's attorney reiterated *this completion date.* Plaintiff, however, did not complete the audit and contends that it could not, and cannot, perform the audit because Education, pursuant to a grand jury investigation, seized the relevant records.

Defendant responds, however, that the records were produced voluntarily and could have been copied before their removal. Moreover, it appears that plaintiff never asked for the records until the discovery phase of this lawsuit. In any event, plaintiff has not established that the records taken by Education are required or sufficient to perform an audit.

10. According to a special agent with Education's Office of the Inspector General, plaintiff did retain a C.P.A. to conduct an audit. The C.P.A. found that from 1983–85 plaintiff received approximately $900,000.00 for which it could not account. When the accountant advised plaintiff of this finding, plaintiff requested that the accountant stop the audit.

11. An OSFA official recommended approval of both the September 30 and October 3, 1985 cash requests after making minor accounting changes. Plaintiff contends that this recommendation entitles plaintiff to the amounts sought in September and October. In deposition, however, the official conceded that he did not have the ultimate authority to recommend payment.

Court, alleging that the United States had violated an agreement to reimburse them for funds disbursed to students eligible for various federal student aid programs. They allege that as a result of Education's failure to reimburse, plaintiff was unable to pay its obligations and ceased business in June of 1986.

On or about March 1, 1990, the Internal Revenue Service (the "IRS") sought to impose the federal employment tax liability of Burbank on the Hatches by way of a 100 percent penalty. As a result of the alleged failure by Education to honor its obligation to reimburse the college, Burbank's employment tax obligation to the IRS is unpaid. The Hatches may be forced to bear the employment tax obligation of Burbank. Thus, the Hatches brought this action to recoup the reimbursement funds they allege are due from Education in order to pay Burbank creditors, which include the IRS. They sought reimbursement of $1,248,674.00, together with interest thereon from February 1, 1986.

On July 29, 1991, defendant moved to dismiss the complaint, asserting that the Hatches lacked capacity to pursue their claim against the United States due to lack of privity. Moreover, Burbank lacked capacity because the state had suspended its power to sue in 1986 for failure to file corporate tax returns. After argument on defendant's motion, the court suspended the case on September 3, 1991, in order to allow the Hatches to obtain and submit a certified copy of a certificate of revivor for Burbank. They did so and moved on September 20, 1991, to substitute Burbank as the party in interest. The motion was granted as unopposed on October 15, 1991. After a status conference held on December 19, 1991, the court ordered plaintiff to move for summary judgment.

On January 27, 1992, Burbank, as the new plaintiff, filed its motion for summary judgment. Plaintiff claimed a right to reimbursement of the financial aid money and also claimed that Education's denial of reimbursement was unfair and unreasonable.

On March 25, 1992, defendant filed a combination motion to suspend consideration of plaintiff's motion for summary judgment and opposition to plaintiff's summary judgment motion. Defendant claimed that plaintiff had not performed the audit or provided the documentation that would entitle it to the student aid money. Plaintiff filed its opposition to this motion on May 4, 1992.

On June 22, 1992, the court issued an opinion that 1) granted defendant's motion to suspend consideration of plaintiff's motion for summary judgment pending an audit of plaintiff's student financial aid records; 2) directed Education to make available documents needed for the audit to plaintiff's auditor; and 3) stayed the case pending completion of the audit, or until September 30, 1992, on which date defendant was to submit a status report, whichever was later. *Burbank College*, 26 Cl.Ct. at 327–28. On September 30, 1992, defendant filed its Status Report indicating that the audit had not taken place because apparently, on August 3, 1992, plaintiff had demanded production of documents from Education that it required for the audit.

On October 2, 1992, the court issued an order that 1) lifted the stay set by ¶ 3 of the June 22, 1992 opinion and order and returned the case to the active docket and 2) required that plaintiff show cause by November 2, 1992, why its case should not be dismissed pursuant to RCFC 41(b) for failure to proceed with the audit required by ¶ 1 of the opinion and order.

On November 6, 1992, plaintiff filed its response to the court's order. Plaintiff complained of difficulty in obtaining access to Burbank's records. This difficulty was attributed to the school's having been closed for six years; to Education's seizure and possession of many records for audit and review in a separate criminal investigation; to misplacement of the original documents; and to Education's loss or destruction of many records, such as the supporting documentation for plaintiff's 1985–86 reimbursement requests.

After conducting a status conference on November 23, 1992, the court issued an order directing plaintiff to submit the required audit report to defense counsel by March 31, 1993. Plaintiff was warned that failure to

comply with the order would result in dismissal for failure to prosecute or to comply with the court order pursuant to RCFC 41(b).

On March 31, 1993, plaintiff submitted to defense counsel a March 26, 1993 "Report of Findings," prepared by James R. Jorgensen, C.P.A. In his report Mr. Jorgensen stated that he attempted to perform an audit, in conformity with generally accepted auditing standards, of the student aid records of plaintiff for the period of July 1, 1983, through February 1, 1986. However, Mr. Jorgensen claimed an inability to perform a full audit because "there was not sufficient source data available to permit the examination of the student aid records in accordance with generally accepted auditing standards and the audit guide for Student Financial Assistance Programs issued by the U.S. Department of Education, Office of Inspector General." His report continues:

> Upon notification of this fact, counsel requested that I conduct an examination pertaining to the specific matter of the number of students provided education services for the stated period of time by the College and the amount of federal funds received by the College for the services provided. The purpose of this test was to determine to what extent, if any, the College received more or less in federal funds than it earned in educational services provided.

Mr. Jorgensen reviewed the available records. He concluded that while plaintiff's school had apparently drawn more money than it was entitled to during the 1983–84 and 1984–85 school years, the calculations had to be discounted since they were based on "incomplete, supplementary records, actually notebooks, kept by College employees, not the official student records required to be maintained. In fact, the cash accountability statement was a compilation, rather than an audited report, because verifiable documentation was not available at the time the com-

pilation was issued." Mr. Jorgensen then estimated that plaintiff was eligible for up to $1,729,000.00 in student aid reimbursement, as the college had a total of 1,330 students enrolled in 1985–86, and the average Pell Grant award at that time was $1,701.00 per student. Although Mr. Jorgensen admitted that he did not conduct an audit and had no documentation to verify which of these 1,330 students were actually eligible, he concluded that plaintiff could be owed an indeterminate, but significant, amount of money.[12]

On June 1, 1993, defendant filed the pending motion to dismiss with prejudice. Defendant argues that plaintiff's submission "does not comply with the Court's order because it is not the audit required by the applicable regulations and, as a result, provides no basis for reaching any conclusions concerning … [Education's] liability." Def's Br. filed June 1, 1992, at 3.

Plaintiff responds that Mr. Jorgensen's report is in substantial compliance with the court's June 22 and November 23, 1992 orders. Plaintiff argues that although the audit does not meet strict standards, the results provide adequate information on which to decide whether or not plaintiff misappropriated financial aid monies. Plaintiff contends further that any deficiencies are the fault of Education. After argument the court allowed plaintiff to supplement the record one last time, because plaintiff had made a new argument that Education breached applicable regulations respecting the audit and/or that the audit was in substantial compliance with the regulations. Plaintiff was also given an opportunity to respond to a new declaration submitted with defendant's reply brief that detailed the deficiencies in Mr. Jorgensen's report measured against the requirements of the applicable regulation, 34 C.F.R. § 668.23 (1992). The supplemental briefing adds nothing to the record.

### DISCUSSION

RCFC 41(b) provides:

---

12. His summary follows:

> Based on the documents and records examined, without conducting an audit, I have concluded that the amount of funds that Burbank College of Court Reporting, Inc., dba Westland College, was eligible for in the form of student financial assistance programs for the period July 1, 1983 through February 14, 1986 was significantly greater than the amount of funds drawn down and retained.

Involuntary dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules *or any order of court*, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim. Unless the court in its order for dismissal otherwise specifies, a dismissal under subdivision (b) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . . operates as an adjudication upon the merits.

(Emphasis added.)

■ The court's power to invoke RCFC 41(b) and grant an involuntary dismissal of a pending claim is recognized as broad and discretionary and is based on the totality of circumstances presented. *Strand Electric Service Co. v. United States,* 14 Cl.Ct. 763, 765 (1988) (citing *First State Bank v. United States,* 14 Cl.Ct. 537, 539 (1988)); *see Kadin Corp. v. United States,* 782 F.2d 175, 176 (Fed. Cir.), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986).

■ Well over one year ago, the court ordered plaintiff to conduct a full audit of its student financial aid records. This audit was intended to resolve whether Education owed plaintiff a reimbursement despite plaintiff's earlier failure to follow institutional guidelines. Plaintiff understood that this audit was to conform to common auditing standards and/or the standards established by the General Accounting Office for such proceedings. The court instructed defendant to allow plaintiff access to any documents in its or Education's custody that plaintiff required.

Plaintiff has submitted an incomplete and conclusory audit. Plaintiff admits that what it has submitted is incomplete, but offers an array of excuses and qualifications. Plaintiff primarily argues that missing documentation prevented it from performing a complete audit of the student financial aid records. Plaintiff charges that defendant or Education withheld the required documentation, but fails to explain why it did not then move to compel production. Plaintiff also charges that Education "lost" the evidence, but fails to show what evidence has been lost. Finally, plaintiff claims the passage of years makes an audit of its 1984–85 financial aid awards impossible, but fails to explain how it could then ever assemble evidence of its claim. In short, plaintiff does not identify what has been lost, destroyed, or hidden and fails to explain how it made these determinations.

After arguing that conventional proof of its claim is all but impossible, however, plaintiff proposes a new investigation to establish whether Education owes it a reimbursement. Plaintiff does not specify what it would do differently, or how it might prove its case, given one more chance.

Read in the complete context of events, plaintiff's claims that defendant's stonewalling kept it from submitting a competent audit are not convincing. Plaintiff had the power to compel the availability of any documents withheld by defendant or Education and did not use it. The court has not been given reason to disbelieve defense counsel's assertion as an officer of the court that all the documents in Education's possession were made available for inspection. Neither has the court been shown that necessary documents were otherwise lost or destroyed, or even what documents are missing.

The letters submitted by plaintiff as proof of defendant's or Education's wrongdoing are not demonstrative. Education's October 6, 1992 letter explains that it does not have the financial aid records or any other documents to produce aside from those already turned over during discovery. The letter is not a refusal to provide new information. Education's December 18, 1992 letter represents only a good faith effort to provide a preliminary survey of the information broadly requested by plaintiff on December 14. Similarly, Education's Director, Applicant Systems Division, Program Systems Service, Jeanne Saunders' March 11, 1993 letter to Ronald Lipton, Education's Acting Director, Compliance and Enforcement Division of Institutional Participation and Oversight Services, is a request for sufficient data on the 1330 students whose records were to be pulled from microfiche, so that Education could comply. None of these letters is un-

reasonable or obstructive under the circumstances.

The court is also unconvinced that these letters show a sufficient effort by plaintiff to provide a complete, detailed audit of plaintiff's financial aid records. Despite plaintiff's claims of diligence, a review of this correspondence shows evidence of a tardy and apparently half-hearted attempt to gather the required information. Notably, the letters submitted as evidence of plaintiff's efforts are dated four to ten months from the date on which the audit was ordered, are very general, request only perfunctory information, and seem confused about what is needed. Years into litigation, many months into the audit, and weeks before the audit was due, plaintiff apparently did not know what information it needed nor where it could be found.

Plaintiff frames the issue as choosing from overly formal accounting requirements and substantial, if imperfect, compliance with the court's order. The problems with plaintiff's submission are much more serious. Plaintiff's audit does not meet standards established by 34 C.F.R. § 668.23, but, more importantly, it also fails to show that Education owes plaintiff any money. Plaintiff has essentially submitted only a best-case projection of what its ·case might be worth, without showing whether every eligible student received aid, whether every recipient received the maximum award, and whether the money was disbursed properly by the college. Such a projection is not what this court ordered, and it does not advance this case. Before entitlement may be found, plaintiff must establish a right to entitlement. Since the audit does not constitute any proof of entitlement, it fails to satisfy the court's order in substance, as well as in form.

Plaintiff is responsible for developing and prosecuting its own case. Plaintiff has had ample time and opportunity to investigate its claim and to gather the evidence required. Plaintiff has not provided substantiation even when ordered to do so by the court, under a clear warning that the court would dismiss its claim for noncompliance.

The court cannot accept plaintiff's submission as adequate and cannot find other than that its response to orders of the court amounts to willful inaction posing as diligence. Furthermore, it is implausible that plaintiff would submit correct proof of its claim if further factfinding and litigation were permitted; plaintiff has itself argued that obtaining such proof is impossible. The court's options are exhausted. Accordingly, plaintiff's failure to provide the audit as ordered mandates dismissal of this case.

Dismissal is a harsh measure, but it is warranted when plaintiff has prevented the quick and orderly resolution of a case. *See Claude E. Atkins Enter. v. United States,* 899 F.2d 1180, 1185 (Fed.Cir.1990) (dismissal warranted for failure to comply with court order directing plaintiff to furnish government with pretrial submissions). Dismissal is further justified where plaintiff has ignored an order of the court, following clear and repeated warning of the consequences. *See id.* Involuntary dismissal shields the court from an intolerable loss of control which would result if parties decided for themselves which court orders they would obey and which they would ignore as inconvenient to their claim. *See White Mountain Apache Tribe v. United States,* 5 Cl.Ct. 288, 295 (1984) (order imposing sanctions).

As an alternative ground for dismissal, the court holds that the type of audit undertaken by plaintiff is not that called for by 34 C.F.R. §§ 668.20 and 690.84(b). *See Burbank,* 26 Cl.Ct. at 327. Because the deficiencies noted in defendant's pleadings in support of its motion to dismiss are such to support a finding that plaintiff's audit does not substantially comply with controlling regulations, plaintiff cannot maintain this action.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall enter judgment dismissing the complaint.