INSTITUTO DE EDUCACION UNIVER-
SAL CORP.; Angel Ruiz Rivera; Merar-
is Santos; Carlos Tomas Sanabria; Fer-
mina Santos; David Roger Burgos, and
Ismael Martinez Galarza, Plaintiffs,

v.

Richard RILEY, Secretary, United States
Department of Education, et al.,
Defendants.

Civil No. 96–1893 (JAF).

United States District Court,
D. Puerto Rico.

Aug. 15, 1997.

Benny Frankie Cerezo, San Juan, PR, for
Plaintiffs.

Isabel Munñoz–Acosta, Guillermo Gil, U.S.
Atty., San Juan, PR, for Defendants; Russell

B. Wolff, Alexandra Gil–Montero, U.S. Dept. of Educ., Washington, DC, of counsel.

## OPINION AND ORDER

FUSTE, District Judge.

Before the court is defendants' motion for summary judgment. For the reasons outlined below, we **GRANT** defendants' request as to all claims, except for the clock-hour interpretation claim, which we **DISMISS WITHOUT PREJUDICE.**

## I.

### Factual Background

In 1991, plaintiff Instituto de Educacion Universal (IEU) entered into a contract with defendant United States Department of Education (Department) in order to participate in the Title IV Programs of the Higher Education Act of 1965, 20 U.S.C. §§ 1070–1098 (1988). As an institution eligible to receive Pell Grant funds for its students, IEU had agreed to be bound by federal student financial aid statutes and regulations, and properly account for all funds received and disbursed. 20 U.S.C. 1094(a) (1988) 34 C.F.R. § 668.14 (1995). Up and until October 1995, IEU was on the advance method of funding for receipt of Pell Grant funds. Under this method, IEU only had to certify to the Department that a student was eligible to receive funds in order for IEU to draw funds directly from the Department.

In 1994, the Office of Inspector General of the United States Department of Education for Region II(OIG) conducted an audit of the institution's records. In September 1995, in its Final Audit Report, OIG determined that IEU had improperly administered the Pell Grant Program. As a consequence of the audit, on October 16, 1995, the Department informed IEU that it was going to be switched over to a reimbursement system of payment. Under the reimbursement system, IEU had to periodically submit reimbursement requests, accompanied by the necessary supporting documentation. Because IEU's requests were incomplete in several occasions, the Department requested additional documentation and reimbursement payments were delayed as a consequence.

Partially relying on the findings in the OIG audit, the Department denied IEU's Caguas campus eligibility to Title IV funds. The Department determined that IEU lacked the administrative capabilities and the financial responsibility to administer the Title IV program.

## II.

### Applicable Legal Standards

#### A. Summary Judgment Standard

The familiar purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed.R.Civ.P. 56 advisory committee's note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Where the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the initial showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. *United States v. One Parcel of Real Property with Bldgs.*, 960 F.2d 200, 204 (1st Cir.1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), and courts "must view the evidentiary record in the light most hospitable to the nonmovant and

must indulge all reasonable inferences in his favor." *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

### B. *Fed. R. Civ. P. 12*

In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir.1993); see *also Coyne v. Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). However, the court will not accept plaintiff's unsupported conclusions or interpretations of law. *Washington Legal Foundation,* 993 F.2d at 971.

### III.

#### *Analysis*

#### A. *Reimbursement and Eligibility Claims*

 IEU attacks the Department's decision (1) to transfer it to the reimbursement system of payment, (2) to deny certain reimbursement claims or delay their payment, and (3) to deny Title IV eligibility to the Caguas campus. The parties agree that in reviewing the Department's actions, we apply the deferential standard of review outlined in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (1988); *Citizens to Preserve Overton Park. Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). We will overturn the Department's decision only if we find that it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1988); *Maine State Bd. of Educ. v. Cavazos,* 956 F.2d 376 (1st Cir.1992).

IEU has failed to establish the existence of a genuine disagreement as to some material fact. *One Parcel of Real Property with Bldgs.* 960 F.2d at 204. It is within the Department's discretion to determine the method of providing funds to eligible institutions. 20 U.S.C. § 1226a–1 (1988). *See Bowling Green Junior College v. United States Department of Education,* 687 F.Supp. 293 (W.D.Ky.1988). Similarly, the Department determines whether or not an institution of higher education is administratively capable and financially responsible enough for its branch campuses to qualify for participation in Title IV programs. 34 C.F.R. § 600.21 (1995).

The Department placed IEU under the reimbursement system after the OIG conducted an audit of the school and found that the school committed serious violations of the Title IV program. Upon placing the school on a reimbursement schedule, the Department advised IEU as to the proper documentation to submit with its reimbursement requests. In spite of being advised of the need for proper documentation, IEU failed in several occasions to furnish the necessary documents to expedite their request for funds, causing some delay in the reimbursement payments. Nonetheless, in less than the normal thirty working-day processing time for reimbursements, the Department paid the majority of the reimbursement claims, denying those for which IEU failed to submit necessary information.

Owing to these audit findings, the Department denied IEU's funding application for its Caguas campus. Past administration of Title IV programs demonstrated that IEU was not capable of administering adequately a new location. 20 U.S.C. 1099c(d) (1992); 34 C.F.R. § 668.16 (1995) Further, the Department also denied the Caguas campus application because IEU failed to demonstrate that it satisfied the standards of financial responsibility as required by federal regulations. 20 U.S.C. § 1099c(c), (d) (1992); 34 C.F.R. § 668.15, 668.16 (1995).

IEU charges that the Department did not have any proper factual basis for any of its decisions. IEU has failed, however, to present evidence to rebut the Department's reasons for its actions and show that the Department abused its discretion. Alternatively, IEU contends that administrative remedies for these claims have not been exhausted. Although there are some administrative claims pending, the reimbursement and Caguas branch eligibility issues are not presently part of the administrative process. Accordingly, we summarily dismiss these claims.

## B. *Clock–Hour Regulation*

 The Secretary of Education has established a regulatory formula to determine whether an educational program qualifies in credit hours as an eligible Title IV program, and the amount of Title IV program assistance that a student who is enrolled in that eligible program may receive. The formula requires that a semester, trimester, or quarter hour contain a specific minimum number of clock hours of instruction. A clock hour of instruction is a period of time consisting of (1) a 50– to 60–minute class, lecture, or recitation in a 60–minute period, (2) a 50– to 60–minute faculty-supervised laboratory, shop training, or internship in a 60–minute period, or (3) sixty minutes of preparation in a correspondence course. 34 C.F.R. § 600.2 (1994).

The Department and IEU disagree on the proper reading of the clock-hour regulation. The Department's interpretation of its "clock hour" regulation is a core issue in several ongoing agency proceedings involving I. That being the case, judicial intervention at this juncture is premature. The agency process is the appropriate avenue to resolve any ambiguity that could exist in the Department's regulation. Once administrative remedies have been exhausted and the agency has taken final action, plaintiff can resubmit the issue for judicial review. 5 U.S.C. § 704 (1988); *FTC v. Standard Oil Co. Of California.* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

## IV.

### *Conclusion*

In sum, IEU has failed to show that there is a genuine issue of material fact regarding the reimbursement and eligibility issues. Therefore, we **GRANT** summary judgment as to these claims. The clock-hour claim is **DISMISSED WITHOUT PREJUDICE** because the United States Secretary of Education has not taken final action on this matter.

**IT IS SO ORDERED.**